THOMAS STEARNS

*vs.*

EDWARD W. JOHNSON.

The value of a promissory note being at issue in an action of replevin, testimony tending to show an admission of the defendant as to the value of the note four years prior to the action is not admissible to show its value at the time of the action.

Stearns v. Johnson.

When a general offer of testimony is made by one party, and a general objection made to its admissibility by the other party, if the testimony is admissible for any purpose it will not be error to receive it.

If an instruction given by the court to the jury by a fair construction of it lays down a correct rule of law, although the language used may be liable to misconstruction, if it is not apparent that injury has been done, a new trial will not be granted.

The rule, that a payment of a smaller sum of money is not a satisfaction of a larger debt, is applicable only to cases where the larger debt is fixed and liquidated, or is ascertainable by mere arithmetical calculation; it does not apply when the previous claim is unliquidated and uncertain, and an instruction given to the jury by which they are authorized to apply the rule stated to the case of the settlement of a claim for moneys and personal property as one transaction, and instructed that if they find from the evidence that there was no legal consideration for the settlement, in that case the alleged settlement is void, and they must find for the plaintiff, is erroneous.

Where the validity of a settlement between the parties to an action is in issue, and it appears from the testimony that there is some evidence which might mislead the jury upon the question of fraud in the settlement, although the evidence is insufficient to authorize a verdict avoiding the settlement on the ground of fraud, the party relying upon the settlement has a right, out of abundant caution, to request the court to instruct the jury upon the question of fraud as affecting the case, and if he submits for instruction to the jury correct propositions of law applicable thereto, the court should either give such instructions to the jury, or instruct the jury positively that there is no sufficient evidence of fraud to permit them to consider that question as an objection to the validity of the settlement.

When such instructions are submitted and denied by the court, and portions only of the charge are set forth in the paper-book, the appellate court will presume that the court below did instruct the jury that there was no evidence of fraud in the case.

Appeal from an order of the district court for Goodhue county denying defendant's motion for a new trial.

The cause of action and the questions presented by the appeal are fully stated in the opinion of the court.

Wilder & Williston, for Appellant.

D. A. Secombe, for Respondent.

*By the Court.*—McMillan. J.—This is an appeal by the defendant from an order of the district court denying the defendant's motion for a new trial.

The action is replevin brought by Stearns against Johnson to recover the possession of a certain promissory note mentioned in the complaint.

The complaint alleges: that on the 18th of September, 1865, D. A. Secombe and John De Laittre made their note of that date for $1,500, payable to the order of W. W. Eastman and C. C. Secombe, eighteen months after date, with interest for value received; that at the same time the payees endorsed the note in blank as accommodation endorsers to give it currency; that about June 1st, 1866, D. A. Secombe and John De Laittre delivered the note thus endorsed to the defendant Johnson, as the agent of the plaintiff, in part payment for certain real estate sold and conveyed by the plaintiff and others to De Laittre and others; that the note was then the property of the plaintiff, and was received as his by the defendant, with the agreement on the part of the defendant to deliver it to the plaintiff when received; that on the 19th of October, 1869, at Red Wing, and before the commencement of this action, the plaintiff demanded of the defendant the possession of the note, which was refused; that defendant at the time and place of said demand detained the note, and has ever since so detained the same; that the value of the note is $1,500, and the interest thereon, and demands judgment for the note and its value, &c.

The answer admits the making and delivery of the note, and that defendant received it as the property of the plaintiff as alleged in the complaint, and denies that at the commencement of the action, or at any time subsequent to November 1st, 1866, the plaintiff was the owner of or entitled to the possession of the note, or that the note was of any value exceeding $1,500.

The answer then alleges: that on and prior to November

1st, 1866, there had been mutual dealings and accounts between the plaintiff and defendant which were at that time unsettled, the note then being in the possession of the defendant; that on that day, at Red Wing, the plaintiff and defendant accounted to and with each other, and settled all their accounts and business matters, including the note in question, in and by the terms of which settlement, and for and including said note then and thereby sold by the plaintiff to defendant, the defendant then and there paid to the plaintiff $4,000, in full of all said unsettled accounts, &c., and for said note thus purchased; that as a part of said settlement, and in consideration thereof, and of said $4,000 so paid, the plaintiff then and there sold and transferred the note to the defendant, who then became and has ever since been and now is the owner thereof, and entitled to the possession of the same.

The cause was tried by a jury and a verdict rendered for the plaintiff.

Two exceptions were taken by the defendant upon the trial to the admission of testimony offered by the plaintiff.

The plaintiff in submitting his evidence in chief called E. W. Johnson, the defendant, as a witness, and asked him the following questions:

1. State whether or not before the note was made you did anything in reference to who should make and endorse the note, and if so, what?

2. State whether you accepted the note as a good note?

The issue formed by the pleadings upon the value of the note, is upon its value at the time of the action, which was commenced four years after the making and delivery of the note.

The testimony sought to be elicited tends only to prove an admission by the defendant at the time of the execution of the note, that it was good, but we are unable to see in what respect

it tends to prove the value of the note at the time of suit. The testimony was erroneously admitted.

The plaintiff offered in evidence a letter signed by the defendant written to George H. Stearns, dated March 29th, 1867, marked exhibit F, in the case, which was objected to by the defendant as incompetent, irrelevant and immaterial. The objections were overruled and the defendant excepted.

The offer of the evidence was a general one, no specific purpose of the offer being stated. The letter refers, among other things, to the settlement of Nov. 1st, between the defendant, and George H. Stearns as the attorney of Thomas H. Stearns and H. W. Paine, and refers to the agreement of George H. Stearns, that Thomas Stearns and H. W. Paine " should make and execute all further releases and discharges, &c., discharging the defendant Johnson from all liability by reason of a receipt and notes," referring to the notes of D. A. Secombe and others, and the defendant's receipt therefor, embracing the note in suit. The letter also refers to a suit by Paine to recover the note, &c.

Although there was no conflict in the evidence as to the nature of this settlement, the plaintiff had a right to offer any competent testimony upon that point, and for this purpose, we think, the letter was admissible. Paine not being a party, and so far as the pleadings show not having any interest in the note in suit, the letter was perhaps not admissible for the purpose of showing an admission by defendant that Paine had an interest in the note, at any time. But it does not appear to have been offered for that purpose. If the defendant apprehended that the evidence might have any influence in that direction upon the minds of the jury, he should have guarded the point by requesting a specific instruction to that effect. The offer being general, and the evidence being proper, although

perhaps not very important, to show the nature of the settlement referred to, the exception cannot be sustained.

The plaintiff's attorney upon the trial submitted certain propositions of law, the first of which, with a modification made by the court, and the balance as submitted, were given to the jury, to each of which the defendant excepted.

We are to consider these instructions; the first of which as given to the jury, is as follows:

"That in order to bind the plaintiff by any act of George H. Stearns, it must be affirmatively proved by the defendant, by competent evidence to the satisfaction of the jury, that the said George H. Stearns was fully authorized by the said plaintiff to perform the said act to the extent to which he assumed to act, and that the statement of the said George H. Stearns to the defendant that he was authorized, is not *in itself* competent evidence to prove such authority." The words italicised were inserted by the court, and constitute the modification referred to, which was made at the request of the defendant. To the instruction as given we see no substantial objection.

The rule as to the burden of proof is that "the obligation of proving any fact lies upon the party who substantially asserts the affirmative of the issue." 1 *Greenleaf's Ev.* § 74. The statement of this rule in the instruction given to the jury is as strong as is authorized by the authorities, and the language is liable to misconstruction. We think, however, a fair construction of it does not convey the idea that the agency must be proved by the evidence introduced by the defendant, but imports that it may be proved by any competent evidence in the case; nor do we perceive any error in the instruction as to the extent of the power which was to be proved.

The second instruction: " That a mere authority to receive money, is not authority to compromise or to take a part of the

said money for the whole," was excepted to in the court below, but that exception is not here insisted on.

The remaining third and fourth instructions are as follows :

" 3d. That the payment or receipt of a part of a sum of money due, is no consideration in law for an agreement to release the debtor from the payment of the whole, nor will such an agreement release the debtor from the payment of the balance."

" 4th. If the jury fail to find from the evidence, that George H. Stearns was duly authorized by the plaintiff to make the alleged settlement, or if the jury find from the evidence, that there was no legal consideration for the alleged settlement, in that case the alleged settlement was void, and the jury must find for the plaintiff."

These instructions are all applicable to a case in which it is claimed that a liquidated money demand due was the subject of settlement, and a smaller sum of money than the amount of the demand was taken by the creditor, or one representing himself as his agent, as a payment of the whole demand, and applied to such a case perhaps would not be erroneous.

There is no conflict of evidence, whatever, in this case, as to the fact that the defendant, acting as the agent of the plaintiff, received from the purchasers of the mill property, as the consideration of that sale, $1,500, in cash, and three promissory notes dated 18th September, 1865, payable respectively at six, twelve and eighteen months after their date for $1,500, each, of which the note in controversy is the one last payable; that the two notes first payable were paid to defendant; that none of the money thus received had been paid to the plaintiff at the time of the settlement, and that defendant had also possession of the third note; that the settlement took place in the fall of 1866, on or about November 1st. The only witness who testifies on the part of the plaintiff in regard to the settlement is George

H. Stearns, who acting as the agent of the plaintiff made it. He states distinctly : " I proposed to the defendant if he would give $4,000, I would give him a receipt in full for the proceeds of the mill, and he retain the note in suit. Nothing was said about the value of that note. When we had agreed upon the $4,000, he wanted me to take that note as a part of the $4,000; this I refused to do, and finally we agreed on the $4,000 to be paid me. * * * I finally consented to take $3,800 in the bonds of the United States for the $4,000 ; signed the long receipt and delivered it to the defendant. * * * He (defendant) paid me instead of $4,000 in cash, $3,800 in 7–30's. The defendant said they were worth 5 per cent. premium here. In Boston they were worth, as I understood, 5 1-4 per cent. I agreed to take them, and did take them at $4,000."

There is no foundation, whatever, in the evidence for disputing the fact that the moneys and note remaining unpaid for the mill purchase was the matter settled at that time, nor that a general settlement took place on that occasion; but the testimony of George H. Stearns tends to show that the general settlement of accounts took place immediately after the settlement of the mill purchase above detailed. The defendant's testimony tends to show that there was but one settlement, and that a general one, embracing the mutual accounts of the parties, including the mill purchase. Taking the plaintiff's own evidence, in the most favorable light for him, it establishes that the settlement was a settlement of the matter of the mill purchase, and embraced in it the moneys paid to the defendant, and the note for $1,500 (the value of which was not determined) in his hands, and not then due; that the $4,000 in bonds were paid by the defendant as the consideration for the settlement, and in satisfaction of all matters embraced within it. There can be no doubt, whatever, it seems to us, that, assuming the agent's authority to make the settle-

ment he did, the settlement was not of a liquidated demand within the rule relied on by the plaintiff, but was a settlement for moneys and property in the hands of the defendant, as one subject matter, and was one transaction, in which all claims of the plaintiff against the defendant for moneys and property arising out of the mill transaction were satisfied and discharged and the property passed to the defendant.

The rule, that a payment of a smaller sum cannot be a satisfaction of a larger debt, is applicable only to cases where the larger debt is fixed and liquidated, or is acertainable by merely an arithmetical calculation, it does not apply where the previous claim is unliquidated and uncertain. 1 *Smith's Lea. Cases* 6, *Am. Ed. p.* 564, and authorities cited. The instructions given to the jury in this case, therefore, were not applicable, yet being given as the law of the case applicable to this settlement, the jury may well have found that the settlement was made as stated by the plaintiff's witness, and that the agent making the settlement had full authority to do so, and yet applying the rule given in these instructions may have found that the settlement was void for want of consideration. The instructions were, therefore, erroneous, and may have operated to the injury of the defendant, which is sufficient ground for a new trial.

The defendant submitted certain propositions in regard to the question of fraud as avoiding the settlement, which were refused on the ground of their inapplicability, the court assuming that there was no question of fraud in the case. It is true there was no sufficient evidence of fraud before the jury to justify a verdict for the plaintiff on this ground, neither does it appear that the plaintiff on the trial claimed distinctly that the settlement was void for fraud, nor does it appear that he disclaimed that ground. It appears from the evidence, that at the settlement the defendant told George H. Stearns, the son

of the plaintiff, who represented himself as the agent of the plaintiff in making the settlement, that his father, the plaintiff, when at the defendant's house in 1865, had attempted to commit a rape upon the defendant's daughter; and George H. Stearns testifies that the defendant said the insult had damaged him $10,000; had kept him out of business, and then testifies: "I asked him how we could settle the business. He proposed to settle by giving me the $1,500 unpaid note. He said he had nothing out of which I could collect the debt but some wild land in Wisconsin that he was tired paying taxes upon."

The defendant in his testimony detailing a conversation with the plaintiff had in Red Wing in June, 1867, after the alleged settlement, says: "The plaintiff said he had sent his son George out here to settle with me, and that he had full authority as his agent to settle all his business with me, and complained only that in the settlement I was too hard on George or had swindled him."

Howard E. Johnson testifies: "In the spring of 1867, in front of Simmons & Johnson's store in Red Wing, I met and had an interview with the plaintiff. He opened on me and I followed. We had quite a little spat. While we were talking father (the defendant) came up. I asked the plaintiff if George was authorized to make the settlement with father. He replied that he was, but that father in the settlement had got the advantage of him—had overreached him; perhaps he said had swindled him. That was his complaint. He did not claim that George was not authorized to settle."

Thomas Stearns the plaintiff testifies : " When I was in Minnesota in June, 1867, I saw the defendant near Simmons' and Johnson's store in Red Wing. No one was with us. I had a talk with him, but did not tell him that George had authority to settle with him. Our conversation lasted about five minutes. We went into Simmons' and Johnson's store. Howard

was at the further end of the store. This was the only conversation I had with the defendant during that visit to Red Wing."

It will be perceived that Thomas Stearns admits the fact of a conversation as stated by the two witnesses mentioned, and does not contradict their statements that he charged in that conversation that the defendant had swindled George his son, in the settlement; that that was his complaint; nor does he deny the statement that he did not claim that George was not authorized to settle, leaving it open to inference that he claimed that George had been swindled in the settlement, and that that was the only claim he made.

These facts, then, appear: that at the settlement defendant charged George's father with an attempt to ravish his daughter; that he stated he had nothing out of which the debt could be collected but some wild land in Wisconsin comparatively worthless; and the uncontradicted statement that in the Red Wing conversation after the settlement, the plaintiff claimed that the defendant had swindled his son in making the settlement; and it does not appear that the plaintiff on the trial disavowed any right to avoid this settlement on the ground of fraud. Under these circumstances we think the defendant, out of abundant caution, and to guard against any misunderstanding on the part of the jury, had a right upon requesting the court, to have proper instructions given to the jury upon the law as to the question of fraud avoiding the settlement.

Without examining the particular requests submitted, and for the determination of this point, as no objection is made to the instructions on any other ground than their inapplicability, assuming them to be correct in other respects, we are of opinion that the court should either have instructed the jury positively that there was not sufficient evidence of fraud to permit them to consider that question as an objection to the

validity of the settlement, or have given the instructions requested. Since the entire charge is not set forth in the paper book, we must presume that the court did instruct the jury as we have indicated it should have done, and, therefore, cannot sustain the exceptions to the refusal of the requests submitted by the defendant's counsel.

It is unnecessary for us to consider the other points raised in the case.

The order denying a new trial is reversed.