# THOMAS STEARNS,

## *vs.*

# EDWARD W. JOHNSON.

Defendant, residing in Minnesota, had in his hands, as the agent of plaintiff, a resident of Massachusetts, $4,500 in cash, and A's promissory note for $1,500, payable to bearer, and falling due March 18, 1867. B, assuming to act for plaintiff, but being in fact unauthorized, on Nov. 1, 1866, agreed to take, and did take, $3,800 in U. S. 7-30 bonds, as the equivalent of $4,000 in cash, in full for said $4,500, and said note, which defendant was to retain as his own. Notice thereof was promptly thereupon given by said agent to plaintiff, but no notice of repudiation was in any form given to said defendant by plaintiff until the note had matured. *Held*, that when plaintiff had been thus informed of what had been done, he was bound to dissent, and give notice of his dissent, within a reasonable time, otherwise he made the act his own; that the question of reasonable time was, under the circumstances, a question of law for the court; and that it was correct in charging the jury "that, as matter of law (the above facts being conceded,) the plaintiff did not repudiate the settlement within a reasonable time after notice thereof," although plaintiff's silence

Stearns v. Johnson.

arose from the fact, that if defendant were earlier informed of plaintiff's dissent, there would be danger that defendant, who was insolvent, would put the note out of his hands, and thereby prevent plaintiff from asserting his title thereto.

Evidence that defendant took legal advice, before settling, as to whether a criminal action could be brought against him for refusing to pay over the funds in his hands, and that he stated that plaintiff had attempted to commit a rape upon his daughter, and that he meant to make him pay roundly for it, was properly excluded as immaterial.

After the decision of the former appeal in this action (reported 17 *Minn.*, 142), a new trial was had in the district court for Goodhue county, resulting in a verdict for the defendant, under the direction of the court. The plaintiff appeals from an order denying a motion for a new trial.

The action was brought to recover possession of a promissory note for $1,500, described in the complaint. In September, 1865, the defendant, as plaintiff's agent, sold certain mill property of the plaintiff, and on the 1st November, 1866, the defendant had in his possession, as the proceeds of such sale, belonging to the plaintiff, the sum of $4,500, (with interest,) and the note in suit, in which money and note one Paine then had an interest as stakeholder, which interest he subsequently, and before the commencement of this action, assigned to the plaintiff. On the 1st of November, 1866, one George H. Stearns, the plaintiff's son, claiming to be the authorized agent of the plaintiff and of Paine, (both of whom resided in Massachusetts,) had a settlement with defendant at Red Wing, where defendant resided. By the terms of the settlement George H. Stearns agreed to accept $3,800 in United States bonds, as the equivalent of $4,000 in cash, in full satisfaction of plaintiff's and Paine's claim upon defendant for the proceeds of the sale of the mill property, including the note in suit, which note defendant was to retain as his

own property. The bonds were accordingly delivered by the defendant to Geo. H. Stearns.

It was conceded at the trial that Geo. H. Stearns promptly notified the plaintiff and Paine of the settlement he had made with the defendant; that neither plaintiff nor Paine gave to the defendant any notice of repudiation of the settlement until March 21st, 1867, and that the bonds had been received by plaintiff, and had not been and would not be returned to the defendant.

The note in suit was indorsed in blank when received by defendant from the purchasers of the mill property, and did not mature until March 21st, 1867.

George H. Stearns having testified that, at the time of the settlement, the defendant told him that the plaintiff " could do nothing with him, as he did not own a dollar's worth of property in the world," except some worthless wild land, the plaintiff offered in evidence certain correspondence between plaintiff and his attorney in November and December, 1866, in which the plaintiff asked his attorney to take legal means to prevent the collection of the note, but was advised by his attorney that, if defendant should mistrust any trouble about the note, he would put it out of his hands before maturity, and that the best course was to keep quiet until the maturity of the note; which advice the plaintiff accepted and followed. In connection with this correspondence, the plaintiff offered to show that, in pursuance of the advice and directions therein contained, an action to recover possession of the note in suit was brought, as soon as it matured, by Paine against the bank to which it had been sent by defendant for collection This evidence was offered to show the reason why plaintiff did not sooner repudiate the settlement. The defendant objected to its introduction, the objection was sustained, and plaintiff excepted.

Stearns v. Johnson.

The plaintiff also offered to show that, shortly before the date of the settlement, defendant had informed Mr. Secombe, the plaintiff's attorney, and one of the makers of the note in suit, that in the fall of 1865 the plaintiff had attempted a rape upon defendant's daughter, and that he was going to make plaintiff pay roundly for it; and asked said Secombe if any criminal action could be brought against him, in case he refused to pay over to the plaintiff the proceeds of the mill property; and that said Secombe advised him that there could not.

Upon defendant's objection the evidence thus offered was excluded, and plaintiff excepted.

The exceptions to the instructions given and refused by the court, are stated in the opinion.

D. A. Secombe, for Appellant, cited to the point that the question, whether plaintiff repudiated the settlement within a reasonable time, should have been left to the jury, 2 *Parsons on Contracts*, 661, 662; *Howe vs. Huntington*, 15 *Maine*, 350; *Hill vs. Hobart*, 16 *id.* 164; *Joy vs. Sears*, 9 *Pick.* 4; *Reynolds vs. Ocean Ins. Co.*, 22 *Pick.* 191; 12 *Metc.* 284; *Haskins vs. H. M. Ins. Co.*, 5 *Gray*, 432; *Haywood vs. Harmon*, 17 *Ill.* 477; *Union Nat. Bank vs. Baldenwish*, 45 *Ill.* 375; *Detroit & Milwaukee R. R. vs. Van Steinburgh*, 17 *Mich.* 99; *Luckhart vs. Ogden*, 30 *Cal.* 547; *Tyler vs. Webster*, 43 *N. H.* 147, that a principal, by ratifying the authorized acts of his agent, does not thereby adopt and ratify his unauthorized acts, *Condit vs. Baldwin*, 21 *N. Y.* 225; *Coyle vs. City of Brooklyn*, 53 *Barb.* 41.

Wilder & Williston, for Respondent, cited to the point that, in the present case, the question of reasonable time is a question of law alone, *Tindall vs. Brown*, 1 *Term Rep.* 168; 2 *Parsons on Contracts*, 535; *Spoor vs. Spooner*, 12 *Metc.* 281;

*Atwood vs. Clark,* 2 *Greenl.* 249 ; *Kingsley vs. Wallis,* 14 *Maine,* 57 ; *Greene vs. Dingley,* 24 *id.* 131, that in the present case the plaintiff's delay was unusually long, and that thereby he made his agent's acts his own, *Story on Agency,* § 258, 255 ; 1 *Parsons Cont.* 51 ; *Caimes vs. Bleecker,* 12 *Johns.* 300 ; that plaintiff cannot repudiate the settlement without returning or offering to return the bonds, *Story on Agency,* §§ 242, 250, 258 ; 1 *Pars. Cont.* 49, 50, 51 ; 2 *Hilliard Torts, p.* 146, § 6 ; *Woodbury vs. Larned,* 5 *Minn.* 339 ; *Humphrey vs. Havens,* 12 *Minn.* 298 ; *The F. L. & T. Co. vs. Walworth,* 1 *Cowen,* 435 ; *Palmerton vs. Hucksford,* 4 *Denio,* 166 ; *Smith vs. Tracy,* 36 *N. Y.* 79 ; *Benedict vs. Smith,* 10 *Paige,* 126 ; *Bryant vs. Moore,* 26 *Maine,* 84 ; *Wheeler vs. Wheeler,* 11 *Vt.* 60 ; *Barker vs. Harris,* 30 *id.* 424.

*By the Court.*—RIPLEY, CH. J.— Upon the case as settled the following seems to be quite as applicable now as it was in respect of the former trial, viz. : " There is no foundation whatever in the evidence for disputing the fact, that the moneys and note remaining unpaid for the mill purchase was the matter settled at that time, (Nov. 1, 1866,) nor that a general settlement took place on that occasion ; but the testimony of Geo. H. Stearns tends to show that the general settlement of accounts took place immediately after the settlement of the mill purchase. The defendant's testimony tends to show that there was but one settlement, and that a general settlement, embracing the mutual accounts of the parties, including the mill purchase." *Stearns vs. Johnson,* 17 *Minn.* 142.

Said mill property had been sold for $6,000, on the 18th September, 1865. Defendant, as plaintiff's agent, had then received the price, viz. : $1,500 cash, and three notes of that date, payable respectively at six, twelve and eighteen months thereafter, for $1,500 each, with interest. The last, not yet

due, was still, on Nov. 1, 1866, in defendant's possession, and the two others had been paid to him.

He therefore had received for plaintiff between $4,500 and $5,000 in cash. Said George H., according to his testimony, assuming to act for plaintiff, agreed to take, and did take, $3,800 in U. S. 7-30 bonds, at 5 1-4 per cent. premium, as the equivalent of $4,000 cash, in full for this sum and the said note, which defendant was to retain as his own.

The following instruction was given at plaintiff's request, viz.:

" 4th. If the jury fail to find from the evidence that George H. Stearns was duly authorized by the plaintiff to make the alleged compromise and settlement, they must find a verdict for the plaintiff, unless they find from the evidence that the plaintiff neglected an unreasonably long time, under the circumstances, to repudiate the same."

The court also instructed the jury, at defendant's request, as follows:

" 7th. If the settlement was made as claimed by said defendant, the plaintiff, if he would repudiate it and claim the note, was bound to do so within a reasonable time after notice to him * * * of the settlement, and to give notice of such repudiation to said defendant.

"8th. If the jury find that the settlement was made on the first day of November, 1866, and notice thereof was promptly thereafter given by said agent to said plaintiff, * * * and no notice of repudiation was in any form given to said defendant by said plaintiff, until a day as late as March 21, 1867, such notice of repudiation was not within a reasonable time."

And the court declined to instruct the jury, at plaintiff's request, as follows:

"5th. The question whether the plaintiff repudiated the

settlement made by Geo. H. Stearns in a reasonable time, is, under the circumstances of the case, a question for the jury."

The case further shows that counsel for both parties having conceded that the settlement was made on the first day of November, 1866, and that notice thereof was promptly there-after given by said agent to said plaintiff, and that no notice of repudiation was in any form given to said defendant by said plaintiff, until as late as March 21, 1867; the court, of its own motion, charged the jury "that, as matter of law, (the above facts being conceded,) the plaintiff did not repudiate the settlement within a reasonable time after notice thereof, and that, on that ground, they must find a verdict for the defendant."

Assuming Geo. H. Stearns' want of authority, and that his account of the settlement is the true one, we are nevertheless of the opinion that there was no error in the above instructions and refusals to instruct.

Where one acting for A passed notes, belonging to A, to B in payment of a debt of A's, the court *held*, "that if the fact of such transfer for such purpose, with all the attendant circumstances, became known to A, it was his duty within a reasonable time thereafter to repudiate the transaction, and disown it as unauthorized; and if he failed to do so, he would virtually ratify and adopt the act of his professed agent, and be bound by it.

"The rule is a very stringent one upon the principal in such cases, where, with full knowledge of the acts of his agent, he receives a direct benefit from them and fails to repudiate the acts. When the principal is informed of what has thus been done, he must dissent and give notice of his dissent within a reasonable time; and if he does not, his assent and ratification will be presumed." *Brigham vs. Peters*, 1 *Gray*, 139, 147.

Geo. H. Stearns accepted $4,000 in full for more than $4,500

Stearns v. Johnson.

in cash and a note for $1,500, presumably of some value. Was this a case in which the plaintiff, with full knowledge of the facts, received a direct benefit from his agent's action?

His knowledge is admitted, both of the settlement and the reasons his son had for making it. "Taking the plaintiff's own evidence in the most favorable light for him, it establishes that the settlement was a settlement of the matter of the mill purchase, and embraced in it the moneys paid to the defendant and the note for $1,500, (the value of which was not determined,) in his hands and not then due; that the $4,000 in bonds were paid by the defendant, as the consideration for the settlement, and in satisfaction of all matters embraced within it. There can be no doubt whatever, it seems to us, that  *  *  *  *  *  *  the settlement  *  *  was a settlement for moneys and property in the hands of the defendant, as one subject matter, and was one transaction, in which all claims of the plaintiff against the defendant for moneys and property, arising out of the mill transaction, were satisfied and discharged, and the property passed to the defendant." *Stearns vs. Johnson, supra.*

On this state of facts, this court was of opinion, that the settlement was upon a sufficient consideration moving from defendant. (*Stearns vs. Johnson, supra.*) If so, it seems to us that this is a case in which the principal received a *direct benefit* from the acts of the agent, in the sense in which the words are used in the authority quoted from.

Whether a *better* settlement might not have been made, or whether the plaintiff might not, but for the settlement, have recovered from the defendant all the cash and note, is immaterial. In other words, the *quantum* of benefit is immaterial. If it were otherwise, it might be open to plaintiff to contend, supposing the defendant to have paid the agent all the cash he had received, and within a fraction, however small, of the

actual cash value of said note, that nevertheless he had received no *direct* benefit from such a settlement.

Nor can there be any doubt that the court was right in declining to instruct the jury, that the question of reasonable time, was for them, and instructing them, as it did, that as a matter of law, notice of repudiation was not given in a reasonable time.

Whether the question of reasonable time is one of fact for the jury, or law for the court, must depend upon the circumstances of each particular case.

If the court, in the particular case, can draw the conclusion by the application of any legal rules or principles, the conclusion is a legal one. But if, on the other hand, the circumstances be so numerous and complicated as to exclude the application of any general or definite rule of law, the further inference is necessarily one of mere fact, to be made by the jury. *Cochran vs. Toher*, 14 *Minn.* 385; *Derosia vs. W. & St. Peter R. R. Co.*, 18 *Minn.* 135.

It cannot be said, looking to the conceded facts aforesaid, that the circumstances in the present case are either numerous or complicated. On the contrary, they are few and simple, and all the facts bearing upon the question of reasonable time are conceded as aforesaid.

The concession is, that the agent *promptly* notified the plaintiff of the terms of the settlement. By the testimony, it appears that Geo. H. Stearns left Minnesota and returned home immediately on such settlement, and on his return, viz.: in said November, reported at once to the plaintiff what he had done. This is properly called "promptly." Nothing whatever prevented plaintiff from as promptly notifying his dissent to the defendant, or at once, upon being informed of the facts. Delay in such a case would seem to be *unreasonable.*

· *Statim*, is the expression used in the civil law.   2 *Kent*, *Com.* 616.  " If a party does not disown the acts of his agent *as soon as he can* after they come to his knowledge, he makes these acts his own."   1 *Parson's Cont. 5th Ed.* 51, *a.*   " A principal is bound to disown the unauthorized act of his agent the first moment the fact comes to his knowledge, otherwise he makes the act his own."   *Chitty on Contracts, Perkins' Ed.* 202, *Note* 2.   But the plaintiff insists, that the note being transferable by delivery, he ran the risk, by moving earlier than its maturity, (March 21, 1867,) of defendant's putting it out of his hands, and thereby preventing his asserting his right thereto, it being also in evidence, that at the time of settlement defendant told Geo. H. Stearns, " that we could not do anything to him, as he did not own a dollar's worth of property, but a piece of wild land over in Wisconsin, and that we could have, as he had paid taxes on it long enough," and he asks, whether it was unreasonable, Geo. H. Stearns having reported this to plaintiff, for the latter to remain quiet till the note matured?

It was plaintiff's duty to give notice of dissent.   Upon giving it, it would be defendant's duty to hold the note upon trust for plaintiff.   If he were honest, he would do so, and there would be no excuse for plaintiff's delay.

Suppose him to be both dishonest, one who, if apprised of the plaintiff's dissent, would at once sell the note; and insolvent, so that plaintiff would be remediless in respect of its value.   To prevent this, the plaintiff, though dissenting, would conceal his dissent from defendant; he would have him suppose that he is satisfied; for, " if he should mistrust any trouble about the note, he would put it out of his hands before maturity, and that would make it safe in the hands of an innocent party."   In other words, the plaintiff would

take a course, calculated and intended to create a false impression, for his own advantage, upon the defendant's mind. This is not a valid excuse for not promptly giving notice of dissent. It follows that the *motives* of the plaintiff for the delay, as he explains them, do not enter into the question of reasonable time, and that the jury had nothing to do with the question whether such motives were reasonable, and whether the delay induced by those motives was unreasonably long.

As the plaintiff did not repudiate the settlement within a reasonable time after notice, his assent was to be presumed, and the court was therefore right in directing the jury to find a verdict for defendant on that ground.

These considerations dispose of the case; for, in view of them, the correspondence between plaintiff and Mr. Secombe as to his lying by till the maturity of the note, and the offer to show that, in pursuance of the advice and directions therein, a suit was commenced as soon as the note matured, to gain possession thereof, against the bank, to which it had been sent for collection, and notice given to defendant, are seen to be immaterial.

So, it is entirely immaterial that defendant consulted Mr. Secombe, before settling with Geo. H. Stearns, as to whether a criminal action could be brought against him, if he refused to pay over the proceeds of the mill property, or informed him that plaintiff had attempted to commit a rape upon his daughter, and that he meant to make him pay roundly for it.

What defendant *meant* to do is not in question, but whether plaintiff has assented to *what was* done, with full knowledge of the facts.

As to the excluded evidence, which plaintiff contends was admissible, as tending to show that Geo. H. Stearns was not

Stearns v. Johnson.

authorized to make the settlement, to which he testifies, sup-posing it to have been competent, still its exclusion is no ground for a new trial; for, assuming that he was not so authorized, the plaintiff has ratified his acts.

Order appealed from affirmed.