## HINES v. JARRETT.

1. Where the complaint alleges injuries done to the lands of plaintiff by a dam erected by the two defendants, and afterwards continued by one of the defendants to whom the other had conveyed his interest, two causes of action for separate injuries are improperly united in the same complaint. In such case, the complaint should have been dismissed, or the plaintiff required to elect between the actions. Mr. Justice McGowan *dissenting.*

2. In appeals involving the correctness of the judge's charge to the jury in a law case, it is unnecessary to bring before this court all the testimony as it was taken at the trial. It is sufficient to present only such facts as bear upon the rulings and charges of the trial judge.

3. A parol encouragement to defendant to establish a mill for the public convenience, given by plaintiff and others, does not constitute a license to flow lands of plaintiff higher up the stream on which the mill and dam are erected.

4. The Circuit Judge did not err in charging the jury in this case, that "a natural flow of sand is just as much a legitimate flow as a flow of water; and if the sand just came down in the natural way, and would have passed off but for the erection of this dam, and the stoppage of the water caused the stoppage of the sand, and that caused injury to the plaintiff, he would have a right of action."

5. Where the accumulation of sand in a stream, to the injury of an upper riparian owner, is caused by a mill dam erected lower down on the same stream, the owner of the dam is not relieved from responsibility, even if this accumulation results in part from hill-side clearings of such upper riparian owner.

Before KERSHAW, J., Spartanburg, March, 1886.

This action was commenced on May 22, 1885, by W. J. Hines, plaintiff. The complaint alleged:

1. That plaintiff is, and at the times hereinafter mentioned was, the owner in fee of certain lands in the county and State aforesaid, to wit, two hundred acres (200), more or less, situated on the waters of Buck Creek, bounded by lands of William T. Thorne, Mary Hines, Elizabeth Hicks, and others, together with the dwelling house thereon.

2. That on the     day of     , 1875, the defendants, Cleveland C. Jarrett and John M. Ezell, wrongfully raised a dam

upon their freehold, in the vicinity and below the plaintiff's land, whereby the water was flowed thereon, and the lands of the plaintiff greatly damaged, the bottom or meadow land made spongy, rotten, and good for nothing; the spring near the dwelling house rendered unfit for use, to the nuisance of plaintiff's said freehold, and to the damage of the plaintiff one thousand dollars.

3. That on the     day of     , 1880, the defendant, John M. Ezell, conveyed to Cleveland C. Jarrett, one of the defendants, his interest in the said dam, and in the land on which the dam was erected.

4. That on the     day of     , 1884, the defendant, Cleveland C. Jarrett, conveyed said freehold, upon which the dam was erected, to Frank A. Johnston and Jerry M. O'Sullivan, who, from that time, ever since have been in possession of said freehold and dam, and wrongfully maintain said nuisance, although, before the commencement of this action, they were, by the plaintiff, requested to remove and abate the same.

Wherefore the plaintiff demands judgment:

1. That the said nuisance be removed.

2. That the plaintiff recover of the defendants one thousand dollars damages caused thereby, and costs of this action.

Hines, the plaintiff, was an owner of lands on the creek above the dam, and, after several times complaining without effect to the parties, he brought this action, alleging that the defendants maintained the dam, "whereby the water was flowed on his lands, which were greatly damaged, the bottom or meadow lands made spongy, rotten, and good for nothing, and the spring near the dwelling house rendered unfit for use, to the nuisance of plaintiff's freehold," and praying for one thousand dollars damage, and that said nuisance be removed. The defendants, Johnston and O'Sullivan, after the suit was brought, requested to be relieved of their purchase, and, that being refused, they abandoned the premises, and the action as to them was discontinued. But Jarrett and Ezell resisted, pleading that, before the dam was built, the neighbors, including the plaintiff, encouraged the work; that no damage was done to the plaintiff; and that several causes of action were improperly joined, in this that a joint *tort* is alleged against Jarrett and Ezell, and a separate *tort* against Jarrett alone. On

this latter point, a motion was made to dismiss the complaint, or to divide the actions. The Circuit Judge refused the motion, and ordered the case to the jury. The jury found for the plaintiff "$100 damages, Ezell and Jarrett to pay the amount." . The defendants appealed upon exceptions, alleging error in the following particulars:

1. In refusing the motion to dismiss the complaint.

2. In refusing to split the action, or at least to have the issues affecting the defendants separately tried separately.

3. In refusing to charge that if land owners above cleared out and cultivated their lands, whereby land was washed down into the creek and accumulated at the head of the pond, and thereby injured plaintiff's lands, that defendants were not responsible for such injury, although such accumulations would not have occurred in the absence of the dam.

4. In charging that "it is not enough to show that the plaintiff consented to the construction of the dam, unless he could have known, or reasonably foreseen, that his land would be injured by the dam in the manner complained of. The law presumes that when a party assents to the doing of an act, he only assents to its being done so as not to injure him."

5. In charging that "the utmost effect that a parol license to flow land has is to protect the person acting by authority of it against an action for damages until it is revoked by the licensor, and the license is revokable at the pleasure of the licensor, and will not be a defence for an act done after it is revoked."

6. In charging that "if the stoppage of the water by the erection of the dam caused the stopping of the natural flow of sand in this stream, and the injury resulted to the plaintiff in consequence of those two stoppages of the natural flow of the water and of the sand through the stream and through the land of the plaintiff, then the plaintiff would be entitled to recover just as much as if it was the direct result, without any intermediate agency, of the stoppage of the water, just as much as if the dam had thrown the water over the land of the plaintiff in the first instance."

7. In charging that a natural flow of sand is just as much a legitimate flow as a flow of water, and if the sand just came down in the natural way and would have passed off but for the erection

of this dam, and the stoppage of the water caused the stoppage of the sand, and that caused injury to the plaintiff, he would have a right of action.

8. In charging that when the defendants erected their dam, they ought to have provided against any damages resulting from the stoppage of the ordinary flow of sand down the creek bed of the creek.

9. In charging that if the stoppage of the water stopped the sand, and the sand was just nothing more than the natural flow of sand down the creek caused by the natural and proper use of the soil above, the usual and customary use of it, then if that injured the plaintiff, the defendants are just as much liable as if it had been a direct and immediate result of the stoppage of the water.

*Mr. J. S. R. Thomson,* for appellant.

*Mr. J. W. Carlisle,* contra.

April 20, 1887. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. In this action the plaintiff sought to recover damages for an injury alleged to have been sustained by him in consequence of a dam erected by the defendants, Jarrett and Ezell, across Buck Creek, in Spartanburg County. The dam was erected in 1875, and was on the land of the said defendants, Jarrett and Ezell. It was built to afford water power for a cotton gin and mill, the neighbors all encouraging its erection. The water, originally, was not backed in the channel of the stream above the line of these defendants. In 1880 Ezell sold and conveyed to his co-tenant, Jarrett. In 1884 Jarrett conveyed to the two other defendants, Johnston and O'Sullivan, who were in possession until May, 1885, when this action below was brought against all of these defendants, Ezell, Jarrett, Johnston, and O'Sullivan, the plaintiff alleging injury to his lands above the line of the defendants, &c. The defendants, Johnston and O'Sullivan, after action brought, requested to be relieved of their purchase, which being refused, they abandoned the premises, whereupon the action was discontinued as to them, but it still proceeded as to the other two, Ezell and Jarrett.

At the trial, among other defences set up, these defendants plead misjoinder, in that a joint *tort* was alleged against them both, and a separate *tort* was alleged against Jarrett alone, and upon this ground they made a motion that the complaint be dismissed, or that the plaintiff be required to divide the action. This motion was refused, and the case ordered to the jury, the trial resulting in a verdict of $100 for the plaintiff, "Ezell and Jarrett to pay said amount."

The material exception in the case, and the one which involves the only question upon which the court has differed, is exception 2, which raises the point that his honor erred in refusing the motion as to the misjoinder. Was there a misjoinder of actions? There is no doubt that in *torts* committed by two or more persons, the parties committing the *tort* may be held responsible either jointly or severally, and the injured party may sustain an action against all, any number, or any one of the *tort feasors*, as he may deem best, the only limitation being that he can have but one satisfaction or redress, satisfaction by one or more being satisfaction for all. *Pomeroy Rem.*, section 281. But we know of no rule of law or practice which allows two separate injuries, one committed by one party and the other by another party, to be joined in the same action; in other words, for two persons committing separate injuries to be sued together in one action, as if the injury was a joint injury, and therefore authorizing a joint action.

It is hardly necessary to refer to authority for an elementary principle like this. An injury inflicted by one upon another gives rise to a cause of action to the party injured, and against the party committing the injury, but as to one having no connection with this injury, there is no possible ground upon which he can be embraced in the *tort;* and even though he may have committed a separate injury of the same character and upon the same party, yet it, being distinct and separate, must be the subject of a separate and distinct investigation, and redress, if any. Any other course would not only lead to confusion and complications in the trial of causes, but would frequently subject parties to responsibility for the acts of others with which they really had had no connection.

Now, does this case, as to the motion made below and refused by his honor, fall under the principle first above mentioned or the second? In other words, was the cause of action here a joint trespass solely, authorizing all or any of the parties to be sued, or was there an attempt to combine a joint cause of action against Ezell and Jarrett, with a separate cause of action against Jarrett? If the former, then his honor was correct in his ruling. If, however, the latter, then he was in error, as he allowed two separate causes of action against two separate parties to proceed together, resulting in a verdict against both, without any means of knowing whether the jury found the damages from the injury inflicted by the one, or from that inflicted by both.

From the history of the case given above, it appears that originally, to wit, in 1875, Ezell and Jarrett were co-tenants of the premises, and while thus having a joint interest in the land, they erected together the dam in question, and to that extent they were jointly and severally liable for any illegal injury they may have inflicted upon the plaintiff, and to that extent the action was properly brought against them jointly. But in 1880 Ezell sold out to Jarrett, and Jarrett held possession singly until 1884, when he sold to Johnston and O'Sullivan, and there is a count against Jarrett singly in the complaint. This must have been for an injury accruing between 1880 and 1884, with which Ezell had no connection. Thus there were really two actions, against separate parties for separate injuries, embraced in the same complaint, to wit, an action against Ezell and Jarrett for the alleged injury between 1875 and 1880, while they were joint tenants, and an action against Jarrett for the injury between 1880 and 1884, when he alone owned the premises—the dam and the mill, &c. We think his honor should either have dismissed the complaint or have required the plaintiff to elect between the actions.

As to the other points, we concur with the views expressed in the separate opinion of Mr. Justice McGowan, herewith filed.

It is the judgment of this court, that the judgment of the Circuit Court be reversed on the ground herein, and that the case be remanded with leave to plaintiff to sever if he is so advised.

MR. JUSTICE McIVER concurred.

MR. JUSTICE MCGOWAN. [Omitting his statement, which has been largely used in making the statement of the case as above given.] It seems that much testimony was given on both sides. There is, however, no agreed statement as to its scope and bearing in the case; but, instead, the whole testimony is printed as it was taken at the trial. This, we may say, was unnecessary, as, in a law case, this court is not authorized to look through it with a view to determine its weight as applicable to the points of the case. Only such facts need be embodied in "the case settled or agreed upon" as may be considered necessary, upon the argument of the appeal, to test the correctness of the rulings of law, with which alone this court can deal. That is exclusively the right of the Circuit Judge, and we have no doubt he exercised it on the motion for a new trial, which was made and refused. After a full and careful charge, the jury found a verdict in favor of the plaintiff for $100, "Ezell and Jarrett to pay said amount." These defendants appeal to this court upon the exceptions which are printed in the record.

Exception 2 makes the point that the judge erred in refusing the motion as to the alleged misjoinder of several causes of action. Was there really more than one cause of action stated? It is certain that there was but one plaintiff, with a single cause of complaint, viz., that the dam obstructed the flow of the water and sand in the channel of the creek, so as to injure his lands. It is said, however, that this alleged wrong was done by different persons—at one time jointly and at another separately, which alone created separate causes of action, so different and distinct in character as to be incapable of being joined in the same action. After Johnston and O'Sullivan went out of the case, there were but two defendants, Jarrett and Ezell, who built the dam together, and were undoubtedly both liable, and the objection is reduced to this, that although Jarrett was liable jointly with Ezell, he could not be so charged in the same action for continuing the dam as individual owner after he purchased the interest of his co-tenant.

It must be kept in mind that this was an action *ex delicto* for a *tort*, continuing in its nature, and that in such cases it is not deemed necessary to make very nice distinctions between defendants as to the quantum of wrong done by each, or its precise

character as to being joint or several. Mr. Pomeroy states the rule thus: "The general doctrine is, that the liability arising from *torts* committed by two or more is joint and several in its nature, or, to be accurate, it resembles a joint and several liability. The exceptions are few. * * * In pursuance of the general rule, as given above, if the *tort* is of such a nature that it may be committed by two or more persons in combination, the injured party may bring an action against all the wrong-doers, against any number of them, or against one of them, or may bring a separate action against each one or against any part of the whole. The liability is much broader, therefore, than one which is simply joint and several." *Pom. Rem.* (2nd edition), section 281.

As Judge Platt said in *Low* v. *Mumford*, 14 *Johns.*, 426 : "But in this case, the action is for a nuisance arising from an act of misfeasance, the keeping up a mill dam on a stream below the plaintiff's land. Here needs no averment. that the defendants owned the land on which the dam was kept up. The title to that land cannot come in question in this suit, for maintaining such a dam is equally a nuisance, and the defendants are equally liable for damages, whether the defendants own the land as joint tenants with others, or whether they are sole proprietors, or whether they have any right whatever in it. 'Keeping up the dam' implies a positive act of the defendants—it is a malfeasance, and therefore the plaintiff has a right of action against all or any of the parties who keep up that dam," &c.

We think there was but one cause of action, but if there were two—one against Jarrett and Ezell and the other against Ezell alone—we do not see why they might not be joined. See *Code*, section 139. What the damages should be, as against one or all of the defendants, was for the jury, and they have determined it.

Exceptions 4 and 5 relate to the alleged license, and complain of error in the charge, that "It is not enough to show that the plaintiff consented to the construction of the dam, unless he could have known or reasonably foreseen that his land would be injured by the dam in the manner complained of. The law presumes that when a party assents to the doing of an act, he only assents to its being done so as not to injure him," &c.

No license was necessary to build the dam, for the defendants

erected it on their own land; and we agree with the Circuit Judge, that the parol encouragement to establish the mill for the public convenience, given by the plaintiff in common with the other neighbors, was too vague and undefined to constitute a license to flow lands above the dam. It does not appear that anything special was said upon that subject, or as to what should be the height of the dam contemplated, or that any consideration whatever was paid for the alleged license. The plaintiff, in making no objection, probably did not foresee the results which might follow, and therefore it could not be assumed that he not only foresaw that his bottom lands and spring would be injured by the dam, but that he gave express license that it should be done. In *Angel on Water Courses*, page 63, it is said: "Like all incorporeal hereditaments, the privilege of flowing land can be created only by deed, demise, or matter of record." See *Couch* v. *Burke*, 2 *Hill*, 535, and 1 *Wash. Real Prop.*, 400.

Exceptions 6, 7, 8, and 9 substantially complain of the charge, that "A natural flow of sand is just as much a legitimate flow as a flow of water; and if the sand just came down in the natural way, and would have passed off but for the erection of this dam, and the stoppage of the water caused the stoppage of the sand, and that caused the injury to the plaintiff, he would have a right of action," &c.

The rule as to the rights of riparian proprietors on streams not navigable, is that there may be, and there must be, allowed of that which is common to all, a reasonable use. The true test of the principle and the extent of the use, is whether it is, or is not, injurious to the other proprietors. But in applying this test there is sometimes difficulty, growing out of the doctrine that it is not remote and consequential injuries, but only those that are natural and proximate, which must be accounted for. As, for example, if in this case the dam proper had backed the water over the lands of the plaintiff, there could have been no doubt whatever. That there is a remedy in such case, appears from a multitude of authorities in the books. It is said, however, that the dam itself did not back the water above the plaintiff's line; but that another agent was introduced, the sand, which, being obstructed in its flow by the eddy water of the pond, stopped and filled up the channel,

and this process, controlled by natural laws, extended up the creek and injured the land; and, therefore, the damages must be considered remote and consequential.

Under the circumstances stated, we agree with the Circuit Judge, that it was the plaintiff's right to have an unobstructed flow of the sand as well as of the water, and we cannot say it was error to charge that the injury was, in the sense of the rule, natural and proximate. In the case of *Harrison* v. *Berkley* (1 *Strob.*, 525), the question as to whether damages were remote or proximate was much discussed, and, after a review of numerous authorities, it was held that "where a party by his own injurious act has brought into operation an agent which concurred to produce the consequence, he is no less liable because it was not immediate on his own act." In the judgment rendered in the case, the just remark is made, that "every incident, when carefully examined, will be found to be the result of combined causes, and to be itself one of various causes which produce other events."

But it was further contended that, inasmuch as the sand in the creek was largely caused by the land owners above clearing and cultivating their lands, the defendants should not be held responsible for injuries thus caused, in part at least, by their own acts; and in support of this view was cited the case of *State* v. *Rankin*, 3 *S. C.*, 450. It must be remembered that that was an indictment for a public nuisance, in keeping up a dam, which, as alleged, backed the water, which caused deposits of sand, which by sobbing the low grounds killed the timber, which in turn engendered malaria, that produced sickness in the neighborhood. The final injury complained of was several distinct removes from the alleged cause, and certainly was not its ordinary and natural consequence. Besides, in that case it was shown that some of the parties complaining had, before the sickness, dug a large ditch through the bottoms above the head of the pond, which probably contributed to their unhealthy condition; and it was held that "one is not guilty of a public nuisance unless the injurious consequences complained of are the natural, direct, and proximate cause of his own acts. If such consequences are caused by the acts of others, so operating upon his acts as to produce the injurious consequences, then he is not liable." This case is not analogous to

that, either in respect to the nature of the action, the remoteness of the injury complained of, or the digging of the ditch. Possibly the cultivation of lands lying on small streams may have some effect in filling them up, especially when the natural flow of the water is obstructed, but it seems to us that such effect is entirely too uncertain to change the whole law upon the subject. If, as argued, this view may operate to discourage the use of water power on such streams, that must be attributed to our condition as an agricultural people.

Judgment reversed.