SOHALCK & FENSKE and CARL SCHRAUMN, Appellants, *vs.* HARMON, AIKEN & GALE, Respondents.

APPEAL FROM THE DISTRICT COURT OF BROWN COUNTY.

Under the act of March 8, 1860, *Laws of* 1860, *p.* 216, a party who has taken security for a debt in any of the ways enumerated in the act, cannot maintain an action upon the debt until he has first exhausted his securities. But where he takes an assignment of what he supposes to be a valuable interest in property as security, and afterwards discovers that it is of no value, he is not driven to a fruitless effort to realise upon the pretended security in the first instance, but may at once commence his action upon the original debt, and if the existence of the security is pleaded in abatement of the suit he may allege in reply that the security was valueless, and in fact no security, and upon establishing such fact upon the trial, he may have a judgment for the original demand.

Points and Authorities for Appellants.

I.—The Respondents ought not to recover in this action. The judgment below was contrary to law.

1. Because no suit can be brought in a case such as the one before the Court, where special security is taken after the maturity of the debt providing specially for its payment, without going first upon the security.

2. The Plaintiffs (Respondents,) having accepted the special security from the Appellants under written conditions that out of the security the existing debt should be paid, were bound in law, first to exhaust the security before resorting to the general property of the Appellants, or the Appellants personally. *Burr. on Assign'ts, p.* 128; 2 *Min. R.,* 44; *Stevens vs. Bill,* 6 *Miss. R.;* 1 *Min. R.,* 246; *R. S. Min.,* 333, *sec.* 29; 3 *Min. R.,* 17 (*Willis vs. Davis*); *Bresks vs. Stenen,* 10 *Paige, p.* 11, *and notes to that case; Session L. March* 8, 1860, *p.* 216, *sec.* 1 *and* 2; *Burrill on Assignments, pp.* 37 *to* 44; *Harrison vs. Sterry,* 5 *Cranch. S. C. R., p.* 289, *et seq; Willis vs. Barber,* 4 *Day.,* 42, 429, 430.

3. No suit by Respondents can be maintained against the Appellants when such security has been lost by the carelessness or negligence of the Respondents,—the assignees. The
vol vi.—34

security is the first reliance of the creditor in such cases. *Story on Bailments*, p. 76 to 81, *but see p.* 29, 30, 31; *Pothier on Obligations*, 142, *note* (*n*); 3 *Kent.*, p. 578, 579; 1 *Min. R.*, 246; *Rev. Stat.*, p. 333; *Burrill on Assignments*, p. 128, 129, 184, 423, 424, 431, 438, 440, 472, 525, 526; 8 *How.*, 414; *Story on Partnership*; *secs.* 96, 326, 360, 3 *Kent, note,* p. 78.

II.—1. If the security is lost by the negligence or misconduct of the Plaintiffs, (Respondents,) it will constitute a good defence *pro tanto* to the Plaintiffs' claim. *Pub. Stat. Minn.*, 581, *secs.* 70-1-2-3-4-5, *and subdivisions*; 6 *Ohio State Reports*, 216.

2. The Plaintiffs having made Rehfeld their agent by operation of law, were bound by his acts connected with the agency. 1 *John.'s Cases, p.* 110; 12 *John.'s R* , 300; 6 *Mass. R.*, 193; 2 *Kent's Com.*, p. 614, 616. This principle is too plain to need argument or authorities.

III.—1. Judgment cannot be taken for more than the amount demanded in the complaint, especially when judgment is taken upon the papers without the verdict of a jury. Judgment is demanded for $1,074.45. Judgment is taken for $1,110.34. Judgment and costs for $1,114.56.

2. Judgment is taken against Carl Schraumn as principal, when the pleadings show that he was only a security without any consideration. And it appears in the pleadings that security had been taken by the Plaintiffs from the principals, after the debt was past due. And this security has been released or has been lost by the acts of the Plaintiffs.

3. There is no allegation in the complaint of demand or protest to bind the security.

For these reasons Appellants ask that judgment be reversed and the case remanded to the county of Brown for further proceedings.

Points and Authorities of Respondent.

The Plaintiffs were entitled to judgment in the Court below, because:

I.—The pleadings do not allege payment, but only that certain undetermined interests were assigned "as collateral se-

curity" for the purpose of " securing the payment of said notes."

\* \* \* " Both at law and in equity a mortgage is considered a mere security for money." *Cow. Dig.*, 388, *and* 2 *Cow. R.*, 195; 15 *J. R.*, 319; *Jackson ex dem Norton v. Willard*, 4 *J. R.*, 41; 7 *Cow.*, 662, *Dig.* 394.

The taking of collateral security by the holder, from the maker of the note, will not be any defence to suit brought on the note. *Story on Prom. Notes, sec.* 411.

II.—The pleadings nowhere show or charge that the Plaintiffs Harmon, Aiken & Gale ever owned the goods or interests named in the said chattel mortgage or that possession of any interest whatever was transferred to them.

" The execution and delivery of a mortgage does not divest the mortgagors of the legal title." *Wicox Dig.*, 372; 2 *Ohio R.*, 233-4; *Cow. Dig.*, 388, 33; 2 *Cow.*, 246.

A mortgagor is the owner of the property mortgaged against all the world. *Wend. Dig.*, 441, 448; 5 *Wend.*, 603.

III.—The collateral security set forth in the answer cannot be used as a set-off, because further,—

1. Fr. Rehfeld in whose possession the goods are alleged to have been, is not a party to this action.

" It is a general rule that debts or demands between persons who are not parties to the suit cannot be set off." 2 *Cow. Tr.*, 179.

2. It does not appear that there was ever a final balance struck and agreed to between the co-partners Rehfeld, Schalck & Fenske.

3. It does nowhere appear in the pleadings that Rehfeld ever consented to the assignment by Schalck and Fenske of their interests in the partnership concerns, or that he was ever notified thereof.

4. It does appear by the pleadings that Rehfeld was properly in possession of the " collateral security" set up in the answer, and that the debts of said Rehfeld, Fenske & Co. remained unpaid at the time of the assignment of the said collateral.

5. It does not appear in the pleadings that the Plaintiffs Harmon, Aiken & Gale ever agreed to settle up the partner-

ship accounts of Rehfield, Fenske & Co., nor that they ever received any consideration for so doing, neither does it appear that they ever made Rehfield their Agent.

6. There was nothing pledged and no delivery of any tangible thing whereby the Plaintiffs could realize.

It does not appear that Schalck & Fenske ever gave H, Aiken & Gale any order on Rehfeld for the lumber or their other interests.

"A written order from seller by buyer, directing a person who has care of goods to deliver to vendee, is a delivery; but it is necessary that he who holds the goods should recognize the order and assent to retain them for vendee." *Chitty on Cont.*, 390.

Where something remains to be done for the purpose of ascertaining either the quality or price of the article sold, the property does not pass (6 *Cow.*, 250; *Chitty on Cont.*, 379,) either to distinguish the goods or ascertain the quantity or price. 15 *John.*, 349; 6 *Cow.*, 250; 3 *Wend.*, 112; 7 *Cow. and 7 Wend.*, 406.

IV.—The value of the property assigned as collateral is and was unliquidated and undetermined, and cannot be used as a set off to this action on a promissory note.

D. G. SHILLOCH, and Cox & BRYANT, Counsel for Appellants.

D. S. GRIFFIN and THOMAS COWAN, Counsel for Respondents.

*By the Court*—FLANDRAU, J.—Judgment having been granted in favor of the Plaintiffs upon the pleadings alone, the question presented, is, whether the answer discloses any defence admitting it to be true. The facts stated in the answer are substantially, that the Defendants Schalck & Fenske, on the 1st day of November, 1858, entered into partnership with one Rehfeld in the milling business, for the term of eight months to expire on the first day of July, 1859. Each member enjoyed an equal interest in the concern. The firm transacted business under the name of "Rehfeld, Fenske & Co." On the first day of July, 1859, the partnership was dissolved by its own limitation, and its assets were as follows: Rehfeld

owed it $2,500.00. Other parties owed it $3,000.00, and it had lumber to the value of $800.00. Its liabilities were a debt to Schalck & Fenske of $1,107.05, and to other parties debts to the amount of $400.00. The assets therefore exceeded the debts of the concern $4,792.95. The copartnership was solvent at the time of the dissolution, and continued in the same condition until the time the Defendants Schalck & Fenske assigned their interest to the Plaintiffs to secure their separate debt. This assignment transferred to the Plaintiffs all the interest that Schalck & Fenske had in the assets of the firm of Rehfeld, Fenske & Co., and was made to secure the two notes upon which this action is brought, and another note for $149.28 due from Schalck & Fenske to the Plaintiffs.

This brings us to an examination of the relative rights of the parties at the time this transaction took place, in order that we may determine what interest, if any, passed under the assignment, and whether it can be set up as against an action on the notes.

When a partnership is dissolved by the efflux of time, it is only dissolved so far as the continuance of the business for which it was originally created is concerned ; but it continues for the purpose of closing up the business of the house, and each partner is in full possession of power (unless it is expressly confided to some other person) to pay and collect debts due to the partnership, to apply the partnership funds and effects to the discharge of their own debts ; to adjust and settle the unliquidated debts of the partnership, and to do all other acts necessary to the winding up of all unsettled matters connected with the partnership affairs. *Story on Partnership*, sec. 328, *note* 3.

The interest which each partner has in the assets, is his distributive share after all the debts of the firm are paid and satisfied out of them. This may be a valuable interest, or it may not be worth anything, depending as it does upon the result of the settlement of the concern. Each partner has a lien upon the assets to the end that they shall be first applied to the payment of the firm debts. The firm creditors have no lien upon the assets which entitles them to priority of payment, but their preference is worked out through the

lien which the partners themselves possess. *Story on Part.*, sec. 326, *and note* 1.

This interest of a partner in the property of the partnership is the subject of levy and sale on execution, and may be assigned by the partner. When it is sold or assigned, the purchaser takes exactly the interest that the partner owned, no more, no less. He, however, does not become a partner in the firm by virtue of his purchase, but a tenant in common with the other partner or partners. 1 *Am. L. C.*, 469; *note by Hare & Wallace*; *Phillips v. Cook*, 24 *Wend.*, 338. The purchaser has no right to assume the settlement of the partnership concerns: that right rests with the remaining partner, and confers upon him the right to the possession of the books and papers of the firm, and its property, to enable him to wind up the business. *Matter of Smith*, 16 *John. R.*, 102. As to the distinction in such cases between partners and tenants in common, see *Mersereau vs. Norton*, 15 *John. R.*, 179; *Caldwell vs. Auger & Hebert*, 4 *Minn. R.* 217.

The answer alleges that Rehfeld has converted the lumber into money, realizing thereon $800.00, and that he has also collected $2,000 of the debts due to the partnership. Now if this is true, and the debts of the firm are only $400, exclusive of the debt due to Schalck & Fenske, then on an accounting between the Plaintiffs and Rehfeld, there would be an ample fund from which to pay the Plaintiff's debt, as none of the assets would go to Rehfeld except in reduction of his debt due the firm; and none would go to the Defendants until the Plaintiffs, who represent their whole interest, were paid in full.

These allegations, in the answer alone, constitute a defence since the act of March 8, 1860, which will be hereafter noticed. Those portions of it which charge that the Defendants warned the Plaintiffs against allowing Rehfeld to take possession of the property and collect the debts, have no influence whatever upon the question, because no reason is alleged why Rehfeld should not do exactly as he did. The answer makes no charge against him of insolvency, incompetency or misconduct, and being a partner, he was fully empowered to settle the partnership affairs.

We are cited by the counsel for the Defendants to the act of March 8, 1860, *p.* 216, *Laws* 1860, upon which act they insist that the Plaintiffs cannot maintain an action upon the notes until they have first exhausted their security.   This position is correct where it appears clearly that one of the several securities mentioned in the act have been taken.   We so held in the case of *Fletcher v. Swift*, decided at the present term.   But in this case the question is presented in a different aspect.   Here the answer charges the giving and acceptance of the security, and sets out a statement of the partnership concerns which show that it was available in the hands of the Plaintiffs.   The reply admits the assignment of the Defendant's interest in the partnership assets, but avers that the Plaintiffs never have received any of the property or collected any of the debts, and that the property was no more than sufficient to pay the firm liabilities, and the debts were worthless.   It also denies the allegations of the answer, that Rehfeld had realized from the assets.   Here is an admission of the taking and acceptance of the pretended security, and a denial of its being of any value.   It does not follow that the mere execution of papers that are designed to create a security, shall prevent a party from maintaining an action on the original demand if it turns out that the security is worthless; not merely that it is inadequate, but that it is unavailing for any purpose—as if, for instance, a chattel mortgage should be given upon articles which were not the property of the mortgagor ; or the existence of any other state of facts that would operate an entire failure of the collateral security.   In such cases it would be senseless to hold that a Plaintiff should first exhaust a security, that it was manifest was no security at all.

An analogous principle was recognized by this Court in the case of *Moss vs. Pettingill* 3 *Minn. R.*, 217.   Pettingill had recovered a judgment against Myrick, Moss and others, upon a promissory note.   Moss occupied the relation of surety to Myrick, upon the note. An execution was levied by Pettingill on the property of a firm in which Myrick was a partner. Upon an examination it was discovered that the liabilities of the firm greatly exceeded their assets, and as the joint debts were entitled to a preference, it became manifest that the interest of

Myrick, which was merely a share in the surplus after paying all the firm debts, would not sell for anything. Pettingill thereupon abandoned his levy. Upon this state of facts, Moss filed his bill for a perpetual injunction against the judgment of Pettingill being executed upon his property, claiming that the levy upon the property of his principal, and its abandonment, worked his discharge. He insisted that the levy should have been exhausted by a sale of Myrick's interest ; but we held that the party might abandon the levy, and hold himself ready to show that the interest would not have sold for anything. On *page* 222, the Court says, " It is urged that the Defendant Pettingill had no right to relinquish his levy, but was obliged to pursue it to a legal and actual demonstration, that the property levied upon would all be consumed by the partnership liabilities. We think, however, that when he made his levy, and discovered that the extent of the firm liabilities was so great as to preclude the possibility of anything remaining to apply on his execution, he adopted the best course in abandoning it, taking upon himself the responsibility of establishing the facts, if any surety or party standing in that relation should question the propriety of the release."

Now if, as the Plaintiffs insist in this case, the assets of the firm would not have paid off the firm liabilities, it would have been a useless expense and delay to have called for an accounting with Rehfeld, and demonstrated by judicial decision the insolvency of the firm, in order to gain a status in court upon the original demand, upon the theory of having exhausted the security. We think the Plaintiff is not driven to such a course by the Statute of 1860, but he may bring his action on the original claim, in the first instance, holding himself ready to prove that, *in fact*, he had no security. This issue is made in the pleadings in this case, and we think the Defendants have a right to try it. The affirmative is with the Plaintiffs ; they admit taking the assignment of the Defendant's interest in the partnership assets. That admission puts them out of court until they either show that it was exhausted before bringing the suit, or that it was valueless. They have chosen the latter and must prove it.

There must be a trial of this issue. Judgment reversed and new trial awarded.