SPRAGUE, WARNER & COMPANY .v. ERNEST A. KEMPE.

December 6, 1898.

Nos. 11,343—(154).

74 465
f74 475
74 465
d82 419

**Fraud—Evidence.**

Fraud cannot be established by inconsequential circumstances and facts that are equally consistent with honest intentions, albeit they be facts which show an unwise judgment and imprudent business conduct.

**Sale Procured by Fraud of Buyer.**

If a person, not intending to pay for goods, induces another to sell to him on credit by fraudulently representing, or by causing the vendor to believe, that he intends to pay for the same, or by fraudulently concealing an intent not to pay, the sale is procured by fraud, the vendor can rescind and recover the property.

**Same—Insolvency—Rescission.**

If a vendee is actually insolvent when he purchases goods, mere knowl-

74 M.—30

edge or concealment of the fact is not alone sufficient to enable the vendor to rescind and recover possession. Bad faith and a preconceived intent at the time to defraud—that is, not to pay—must also be made to appear.

**Not Error to Direct Verdict for Defendant.**

>    *Held,* that the trial court did not err when it directed a verdict for defendant herein on the ground that plaintiff had failed to make out its case.

Action in the district court for Hennepin county against defendant, as assignee of the Vanstrum Supply House, an insolvent corporation of Minnesota, to recover possession of certain merchandise of the value of $1,373.48. At the trial before Elliott, J., a verdict was directed for defendant. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*Wm. H. Hallam* and *Jay D. Miller,* for appellant.

*A. D. Smith,* for respondent.

COLLINS, J.

This action in claim and delivery was brought by plaintiff, a corporation doing a wholesale business, against defendant, as the assignee of another corporation, engaged principally in the retail trade, to recover possession of certain merchandise which plaintiff had sold and delivered to the insolvent a few weeks prior to its assignment under the state law.

The complaint alleged the sale and delivery, but plaintiff claimed the right to rescind the sale on two grounds: First, because of certain false and fraudulent representations made by the insolvent at the time of the sale; and, second, because the goods were purchased with an intent not to pay for the same. The ground first mentioned was abandoned at the trial as a substantive cause of action, and the plaintiff wholly relied on its claim that it was established prima facie that the insolvent bought these goods with a previously-conceived and fraudulent intention not to pay for them.

When plaintiff rested, the cause was dismissed, and this appeal is from an order of the court denying a motion for a new trial.

It would be a waste of time should we attempt to state the evidence on which counsel for plaintiff rely as showing a preconceived

intent on the insolvent's part not to pay for the merchandise when it was bought. It is enough to say that in January, 1896, the insolvent made a statement to a mercantile agency, from which it appeared that its resources were over $162,000, while its liabilities, aside from capital stock and surplus, amounted to less than $36,000.

One year later, in January, 1897, a like statement showed its resources to exceed $196,000 in value, while its liabilities, aside from capital stock and surplus, amounted to over $71,000.

In the inventory made by the assignee a few days after he took possession the resources or assets were appraised at $154,684.17, while the actual liabilities, capital stock and surplus having disappeared, amounted to $128,660.19.

To put this in a different form, the assets in January, 1897, exceeded $196,000 in value, while the real liability was less than $72,000. June 23, 1897, when the assignment was made, the assets had declined about 15 per cent. in value, while the actual liability had increased about 80 per cent.; a most remarkable financial change, if the statement made to the mercantile agency in 1897 approached the truth, for the assets had steadily diminished, while the liabilities, without an adequate reason, had increased with great rapidity.

There was no direct testimony bearing upon the truth or falsity of either of the statements, but the plaintiff showed that for some months immediately prior to the collapse large quantities of goods were sold by the insolvent at very low figures, and in many instances at quite a loss. It was conclusively proven by this class of evidence that those in charge of the affairs of the insolvent corporation manifested a lack of judgment, and exceedingly unwise business methods and conduct; but this, of itself, did not establish an intent on their part when purchasing goods to defraud the vendor of the purchase price. Fraud cannot be established by inconsequential circumstances and facts that are equally consistent with honest intentions, albeit they be facts which show an unwise judgment and imprudent business conduct. And while these goods were being sold unwisely, and at prices which indicated a want of good business judgment, the insolvent was making large pay-

ments upon its indebtedness, and had on hand and in bank over $4,100 in cash when the assignment was made.

The credit of the concern was good with the wholesale houses up to within five days of the assignment, and, had it wished so to do, much heavier purchases could easily have been made on credit. Nor was it shown that the corporation was actually insolvent when the goods in dispute were purchased.

No motive was shown on the part of the three stockholders—a father and two sons—for conceiving an intent to purchase goods and not pay for them, for there was an entire absence of evidence tending to show that either had in any way profited by the purchase from plaintiff, or by reason of any other purchase or from the failure itself. They did not draw out noticeable or excessive sums of money for their own use, nor did it appear that they removed goods from the store, or had otherwise appropriated the same.

In 1896 they had adopted a new name for the corporation which clearly indicated a change in business; and on the trial they contended that they sold at low prices for the purpose of closing out and abandoning the ordinary retail trade, and confining their attention to the supply business only.

And from the evidence it seems quite certain that neither of the statements made to the agency revealed the real condition of the corporation, although neither may have been made with fraudulent intent. For illustration, in each there appeared among the assets the item of real estate, valued at $56,420.86. In the 1896 statement, furniture and fixtures were estimated to be worth $5,200.82, and in 1897 the value of those articles was fixed at $7,186.88, while a new item, "catalogues, electrotypes, cuts, etc.," appeared as an asset of the value of $5,443.37. Passing by the estimated value of furniture, fixtures, catalogues, etc., as indicating that a large sum of money was being used for these purposes, it would seem to the most casual observer that a mercantile house could not maintain itself a great while with nearly one-half of its capital and surplus tied up in real estate.

But, while this method of conducting the corporate affairs might clearly establish an absence of good business judgment on the part

of its managers, it falls short of proving an intent to defraud. If the defendant corporation, intending not to pay for the merchandise, induced plaintiff to sell on credit by fraudulently representing, or by causing plaintiff to believe, it intended to pay for the same, or by fraudulently concealing an intent not to pay, the sale was procured by fraud, and plaintiff can rescind. Stewart v. Emerson, 52 N. H. 301.

The corporation made no representations except such as were found in the statements, one made more than one year prior to this sale, the other some months before; and the only evidence which tended to show either of these statements to be untrue was the fact of the assignment, and the radical change in the condition of the concern. And nothing was concealed from plaintiff except as the corporation failed to change a statement of its financial affairs previously made to a mercantile agency, which statement plaintiff asserts it had knowledge of, and relied upon, when selling the goods, but of which knowledge or reliance it is not claimed defendant corporation was advised.

We are of the opinion, construing the evidence most favorably for plaintiff, that in nothing which was done by the vendee corporation prior to the sale, or which it omitted to do with reference to such sale, can an intent be discovered on the part of the latter, at the time of the purchase, not to pay the vendor plaintiff for these goods. If the vendee was actually insolvent when it bought, mere knowledge or concealment of this fact was not of itself, and standing alone, sufficient to enable the vendor to rescind the sale and recover possession. Bad faith and a preconceived intent at the time to defraud must also be made to appear. See 8 Am. & Eng. Enc. 826, cases cited in note 3.

It is urged by counsel that the trial court erred when it refused to allow plaintiff to show that, according to the articles of incorporation, the legal limit of indebtedness fixed for the insolvent was $75,000. The court did make a ruling, from which it appears that such evidence was excluded; but, if this was error, it was subsequently cured, for the fact sought to be proved was soon afterwards admitted of record.

There was no error in the direction of the court that the jury return a verdict for defendant.

Order affirmed.

CANTY, J. (dissenting).

I cannot concur in that part of the foregoing opinion which states that the insolvency of the vendee, and knowledge by him of that fact at the time of the purchase, is not, taken alone, sufficient evidence of an intent on his part not to pay for the goods. If he was hopelessly insolvent, and knew that fact, it is sufficient evidence of such intent. And if he was insolvent, but not hopelessly so, that, with slight additional circumstances, will constitute sufficient evidence of such intent.