STATE ex rel. WILLIAM F. BEISE and Others v. DISTRICT COURT OF
HENNEPIN COUNTY.[1]

June 14, 1901.

Nos. 12,578—(20).

### Certiorari.

The province of a writ of certiorari is to secure a review of questions
of law appearing upon the face of the record, injuriously affecting the
aggrieved party by the determination of the inferior tribunal to which
it is directed.

### Laws 1897, c. 88—Report of Appraisers.

Under Laws 1897, c. 88, the report of the appraisers appointed by the
district court to assess damages caused by the erection of a dam at the
outlet of Lake Minnetonka, when confirmed by the district court, must
be regarded as final, unless it be apparent that some erroneous principle
of law had been pursued in the reception of evidence or by the award of
the board of appraisers.

### Same.

Upon a review of this record in condemnation proceedings under such
statute, it is *held* that it does not show that the action of the appraisers
was based upon an erroneous or illegal basis, and such report, when con-
firmed by the district court, must be regarded as conclusive.

### Maintenance of Dam.

The county of Hennepin had the right, under Laws 1897, c. 88, to
maintain a dam erected by it at the outlet of the lake at a height which
would not submerge lands on its shores above the point of demarkation
between the existence and absence of vegetation, without making com-
pensation, and it does not appear from the record that this proper limit
was exceeded in the proceedings under review.

Certiorari to the district court for Hennepin county and Hon-
orable Charles M. Pond, a judge thereof, to review an order of
said court confirming the report of appraisers appointed to deter-
mine and award compensation for property damaged by the con-
struction of a dam to raise the water of lake Minnetonka. By

1 Reported in 86 N. W. 455.

the report the property of relators was found not damaged and they were denied any compensation. Order affirmed.

*C. B. Smith*, for petitioners.

*F. H. Boardman*, County Attorney, and *C. S. Jelley*, for respondents.

LOVELY, J.

Certiorari to the district court of Hennepin county to return the record in condemnation proceedings under Laws 1897, c. 88.

The petitioners are owners of land adjacent to Six-Mile creek, an inlet of Lake Minnetonka, some twelve miles above the dam maintained at the outlet of the lake for the "improvement of navigation, preservation of health," etc., under the statute referred to. An effort had been previously made under Sp. Laws 1891, c. 381, to establish a uniform height for the maintenance of the waters of that lake, but contained no provision for the assessment of damages to parties injured thereby, and was held invalid by this court for that reason. Carpenter v. Board of Co. Commrs., 56 Minn. 513, 58 N. W. 295. The subsequent act of 1897 (Laws 1897, c. 88) obviated the defect in the previous legislation by providing that three appraisers should be appointed by the district court to assess the damages, if any, caused by the flooding of the lands of parties injuriously affected, who, under conditions provided for therein, were to hear and determine all issues of that character, to file their report with the district court, which should be the subject of review upon final hearing thereon without right of appeal. Appraisers were duly appointed, heard evidence offered by the petitioners tending to show that their lands adjacent to Six-Mile creek had been flooded by reason of the maintenance of the dam, and made report as required by law. This report was set aside by the district court, a second board of appraisers was appointed, who heard anew the evidence, and reported in proper form that none of the petitioners had sustained or would sustain any damage by reason of the dam as then erected and maintained. This report was confirmed upon hearing by the district court, which order, with the whole record, is returned in response to the writ of certiorari issued by this court. A preliminary motion was

83 M.—30

made by respondent to quash the writ upon the ground that the record returned presented no question of law for review, but solely the facts found, involving no more than the amount of damages which petitioners claim to have sustained by the permanent flooding of their lands.

The general authority to exercise the right of eminent domain for the condemnation of land for public purposes, as well as the mode of exercising that right, are undoubtedly within the legislative discretion, hence it follows that the determination of damages, caused by the right to flood the petitioners' lands, by a board of three appraisers, whose report must be reviewed by the district court, was a legal method to secure such right, and cannot be questioned. Wilkin v. First Div. St. P. & P. R. Co., 16 Minn. 244 (271); Weir v. St. Paul, S. & T. F. R. Co., 18 Minn. 139 (155). Very much of the evidence in the case relates to the claim that injury had been and would be suffered by each of the petitioners, and, if there is any contest over the facts on this question, we are precluded from considering such issues by the well-known rule that restricts a review in this court to errors of law disclosed upon the face of the return on certiorari. Small v. Orne, 79 Me. 78, 8 Atl. 152; Weber v. Ryers, 82 Mich. 177, 46 N. W. 233; McCrory v. Griswold, 7 Iowa, 248; People v. Betts, 55 N. Y. 600. But while we cannot, in these proceedings, review the weight of evidence by which the determination of a tribunal properly created to assess damages was reached, yet, if there were questions of law improperly decided, such may be considered under the return, since no appeal is provided for, and they can be reviewed in no other way. State v. Willis, 61 Minn. 120, 63 N. W. 169. And we are inclined not to consider in this action the objection to our right of review in that respect too strictly against petitioners.

Counsel for petitioners claims that an erroneous principle was adopted in the assessment of damages, and (involved in this contention) that the evidence was conclusive that some damages must have been sustained by the petitioners, or some of them. We think, under the claim of petitioners, that, if it can be shown that an improper basis of computation was adopted, whereby they, or

any of them, were deprived of the right to have damages awarded, or that some damages should have been given, and that such right was arbitrarily decided against any one, such petitioner would be entitled to have a rehearing for that reason. But, in looking further into the record under the reviewable claims of petitioners, we find ourselves restricted to a consideration of the sole question whether a correct rule was adopted in the reception of evidence to establish the proper shore line to which the waters in the lake might be raised; for this, in fact, determines the subsidiary question whether, as a matter of right, petitioners were necessarily entitled to damages notwithstanding the finding against each and all by the appraisers.

Petitioners claim that the appraisers determined this question upon the improper basis that the respondent had the right to erect its dam so as to retard the waters to an extent that would submerge the land adjacent to the lake and Six-Mile creek above the ordinary and natural high-water mark, to the extreme line which water reaches in times of extraordinary freshets and rainfalls. If any evidence had been received upon which the assessment was based to maintain this view for the county, the action of the appraisers in that respect, under the rule laid down in Carpenter v. Board of Co. Commrs., supra, would have been erroneous. But we find no evidence of that kind in the record. The testimony of witnesses for the respondent went no further than to show that a shore line had been established, as required by the act of 1897, before the erection of the dam, as well as that the height of the dam was several inches below such line, and would not, therefore, occasion any unlawful flooding of the shores of the lake or its tributaries. It was held by this court in Carpenter v. Board of Co. Commrs., supra, with reference to this same improvement,

"That within the banks, and below high-water mark, the public right is supreme, and that damages to riparian proprietors [caused by the erection of a dam, as here] are damnum absque injuria."

The principle in that case was laid down that "high-water mark" is a mark

"Co-ordinate with the limit of the bed of the water; and that only is to be considered the bed which the water occupies sufficiently long and continuously to wrest it from vegetation, and destroy its value for agricultural purposes. * * * It is the point up to which the presence and action of the water is so continuous as to destroy the value of the land for agricultural purposes by preventing the growth of vegetation, constituting what may be termed an ordinary agricultural crop,—for example, hay."

The entire testimony on behalf of the respondent was based upon this rule, which controls the question involved here.

The dam, as the evidence for respondent tends to show, was erected, from actual surveys, at a height which would not raise the waters of the lake above the line of demarkation between the existence and absence of vegetation along the shores, which, as this court held in the case last cited, must be regarded as the "natural or ordinary high-water mark" up to which Hennepin county had the right of maintaining the dam without being subject to claims for damages. It is claimed for petitioners that this evidence was from witnesses who testified to opinions, and was opposed to testimony of the petitioners, each of whom stated upon oath that their lands had been dry before the dam was erected, and had been actually flooded since that time; but a review of the record does not justify this contention. The evidence to establish such ordinary high-water mark or shore line was given by competent witnesses, who testified to a knowledge of facts from observation and examination, and was more than opinion evidence in this respect.

There was also evidence to establish the fact that the submergence of the lands adjacent to Six-Mile creek was occasioned by floating bogs, obstructions in the current, imperfect drainage, and other causes than the dam, which retarded the natural flow of the creek, and forced the waters of the stream back upon the submerged land; so that it became really a question of fact not only as to what was the proper high-water mark on the shore line up to which the respondent had a legal right to raise the waters of the lake for the maintenance of its dam, but also whether the dam itself caused the overflow of petitioners' lands. This evidence was not only competent, but material; and, looking further into the

record, we do not find that any evidence was received which indicates an improper basis as a judgment of the causes of the overflow complained of. The testimony returned here is very voluminous. It embraces the evidence of numerous witnesses, who were the interested landowners, and stated substantially that some twelve and more miles above the outlet of the lake lands had been submerged subsequent to the erection of the dam during specified periods; that before the dam was erected they were not injuriously affected,—from which, as claimed, it appeared conclusively that the erection and maintenance of the dam was the cause of damage. Conceding that we have a right to review this issue, we find that witnesses did testify before the appraisers that there were reasonable causes for such overflow independent of the erection of the dam, and it follows that this testimony effectually forecloses the petitioners' right to a review of that subject, since it was undoubtedly a question of fact to be determined by the appraisers whether the proper shore line to which the waters in the lake might have been legally raised was adopted; and the determination of the appraisers upon that issue, having been duly confirmed by the district court, must be regarded as final. We find no grounds for holding that the reasons given by the court below in confirming the report were based upon improper grounds.

Order of the district court affirmed.