### D. J. TEW v. WILLIAM WEBSTER.[1]

January 17, 1908.

Nos. 15,365—(55).

**Raising of Dam—Injunction.**

In an action by the owner of a water power to enjoin the maintenance of a milldam by the owner of a lower water power, on the ground that it had been raised and was then maintained at a height which caused the water in the stream to back up under the plaintiff's mill, the evidence examined, and *held* to sustain the finding of the trial judge that the defendant's dam had not been raised during the fifteen years immediately preceding the commencement of the action.

**Refusal to Make Finding.**

After the court had found as a fact that the defendant's dam had not been raised, it was not reversible error to refuse to make a finding upon the issue whether the water had in fact by some means been raised under

------

1 Reported in 114 N. W. 647.

the plaintiff's mill. The fact, if conceded, would not have affected the ultimate fact which had been found against the plaintiff.

**New Trial.**

The court did not abuse its discretion in refusing to grant a new trial on the ground of newly discovered evidence.

Action in the district court for Fillmore county to restrain defendant from raising his dam above a specified height' and for $1,000 damages. The case was tried before Kingsley, J., who found as conclusion of law that the action should be dismissed. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*H. S. Bassett* and *Gray & Thompson,* for appellant.

*Higbee & Higbee* and *G. W. Rockwell,* for respondent.

ELLIOTT, J.

In this action the plaintiff sought to enjoin the maintenance of a milldam at a level which caused the water of the stream to back upon the plaintiff's mill, so as to interfere with its operations. The trial court found that the defendant's dam had not been raised during the preceding fifteen years, and denied any relief to the plaintiff. The evidence was sufficient to show that during the five years prior to the trial the water in the stream had by some means been raised in the plaintiff's tail race about six inches; but, as it was found that the defendant's dam had not been changed, the fact of the rise of the water was evidently considered as immaterial, because it must have been due to some cause over which the defendant had no control. The plaintiff asked for additional findings upon the issue as to whether the water had in fact been raised, and upon the denial of his request moved for a new trial. The appeal is from the order denying his motion.

The appellant assigns as errors: (1) The refusal of the trial court to find whether or not the water had been actually raised in the tail race and upon the plaintiff's water wheel during the period of five years immediately preceding the beginning of the action; (2) the finding as a fact that neither the defendant nor his predecessor in interest had, during the fifteen years immediately preceding the commencement of the action, raised the dam in question, and had not, by means of said dam or otherwise, raised the water in the

stream at the dam above the height at which it had been maintained during said fifteen years; (3) the refusal to grant a new trial on the ground of newly discovered evidence; or (4) because of erroneous rulings in the reception and rejection of evidence.

1. The evidence showed satisfactorily that the water had been raised in the plaintiff's tail race; but it was not, under the circumstances, error to refuse to find that fact specifically. It is true that it was an essential fact necessary to be proven by the plaintiff in order to establish a right to the relief prayed for. But its efficacy depended upon the proof of the further fact that the rise of the water was caused by the raising of the defendant's milldam within the fifteen years in question. Both were necessary and essential facts to be proven before the plaintiff could be successful in the action. But the court found that "neither the said defendant nor his predecessor, Jonathan Webster, have during the fifteen years immediately prior to the commencement of this action raised the dam- referred to in the sixth paragraph, and have not during said fifteen years or more, by means of said dam or otherwise, raised the water of said Rush creek mentioned in said complaint, at said dam, above the height at which it has been maintained during said fifteen years." In view of this finding, the fact that the water had been raised by some other means was no longer of importance in the action, and it was not prejudicial error to refuse to find specifically upon that issue. In his memorandum the trial court said: "The testimony on the part of the plaintiff shows by a clear preponderance of the evidence that the water in the tail race at his mill has been raised about six inches during the last five years, and there was some testimony tending to show that this raise was caused- by a raise of the defendant's dam. On the other hand, the testimony on the part of the defendant establishes by a clear preponderance of the evidence that for fifteen years or more the dam has not been raised. The opinion of the engineers on the part of the plaintiff was that the dam must have been raised, to account for the raise of the water in the tail race at plaintiff's mill. The opinion of the engineer of the defendant was that the raise at plaintiff's mill could be accounted for on the theory that the channel of the creek between the two mills had been filled and

clogged by material which had washed in there, particularly through a so-called dry run mentioned in the testimony, and an experiment was testified to which tended to support this theory. The burden of proving his cause of action rested upon the plaintiff and he was required to establish it by a preponderance of the evidence. This means a preponderance of the entire evidence in the case and all the inferences that may be legitimately drawn therefrom. This, I think, considering the testimony as a whole, the plaintiff has failed to do."

2. It thus appears that the substantial controversy is as to whether the evidence fairly supports the finding of fact that the defendant's milldam had not been raised during the years in question. The finding of the court is of equal weight with the verdict of the jury, and will not be disturbed if there is evidence reasonably tending to sustain it. Knoblauch v. Kronschnabel, 18 Minn. 272 (300); James v. Jordan, 37 Minn. 43, 33 N. W. 5. The evidence is very voluminous and it has been carefully analyzed by counsel; but we cannot refer to it in detail within the reasonable limits of an opinion.

The appellant is the owner of a water power situated on Rush creek, in Fillmore county, and the respondent is the owner of a similar water power four thousand feet below on the same stream. Both parties derive title from one Walker, who constructed the dam at the lower power at a time when he also then owned the upper power. The defendant purchased the lower power January 26, 1904. There was no direct evidence to show that the Webster dam had been raised; that is, no witness testified that he personally knew that the dam had been raised. But the appellant claims that the evidence, particularly that of a scientific character, established facts which made inevitable and necessary the conclusion that the dam had been raised. This conclusion the appellant claims results from (a) the fact, established by three witnesses and practically undisputed, that the water in the creek between the two mills and in the wheel pit of the plaintiff's mill has been and now is, when no water is passing through the wheel of defendant's mill, at least six inches higher than it was before the year 1900; (b) the fact, testified to by numerous witnesses, that the rise of six inches of water in the wheel pit of plaintiff's mill only takes place when the defendant's mill is not in operation and no wa-

103 M.—8

ter is passing through the wheel; (c) the fact that the rise of six inches never occurred prior to the year 1900, and has continually occurred since that time, and occurs only when the defendant's mill is not in operation. It is also claimed that the rise of the water occurred before the obstructions hereafter referred to were placed in the stream. It is possible that this evidence would have justified the trial court in finding that the defendant had so changed his dam as to cause this rise of the water; but the court found otherwise, and there is evidence reasonably tending to sustain the finding.

The defendant's evidence is directed to two propositions:

(a) There is direct evidence of witnesses who claimed to have personal knowledge that the lower dam had not been raised, and if this evidence is credible it is conclusive. Jonathan Webster, who owned the mill from 1882 until it was transferred to the defendant in 1904, testified that the dam was not raised during the period of his ownership. The defendant testified that there had been no change in the dam, and the same testimony in substance was given by at least half a dozen witnesses, who had been in a position to know the facts.

(b) Conceding that there was evidence tending to show that there had been a rise of water in the plaintiff's tail race, the defendant attempted to show that this change in the level of the water had been caused by certain obstructions which had been placed in the stream by other parties or by natural processes between the two water powers. There was evidence that in 1905 there was a stone pile under the plaintiff's mill, and one of the engineers testified that this stone pile would have a tendency to cause the water to rise and fall at the mill. But the principal reliance is placed upon the fact that about midway between the two mills an opening or cut had been made in the bank of the creek, through which large quantities of rock, sand and other débris had been carried into the stream. This cut, known as "Hoiland's Wash," was made about 1900; but the testimony tended to show that the bar was not formed, so as to constitute a serious obstruction, until about 1904, when it came near enough to the surface to make a ripple upon the water. In 1905, when the witness Case made a survey of the stream at the deepest point in Hoiland's Wash, the bed of the stream was but one-tenth of a foot lower than

the bed of the stream at the head of the plaintiff's tail race. It seems reasonable that such an obstruction in the bed of the stream, which necessarily diminished its capacity, would result in raising the water above the obstruction. That this might be the result was conceded by the plaintiff's expert witness Coleman, who stated that the growing of grass in the channel of a stream above a dam, or the filling in of débris of any kind, occasions a loss of cross-section area, and therefore dams the water further up the stream. Case, an engineer called by the defendant, testified that the obstruction in the channel would send the water back onto the plaintiff's mill, and that in his opinion the Webster dam did not back the water into the tail race of the upper mill, and that the obstruction in the channel was the cause of the water rising at the plaintiff's mill.

This principle of hydraulics has been recognized by the courts in numerous cases, among which are State v. District Court of Hennepin County, 83 Minn. 464, 86 N. W. 455, Hines v. Jarrett, 26 S. C. 480, 2 S. E. 393, Knoll v. Light, 76 Pa. St. 268, 2 Farnham, Waters, § 570. It furnishes a reasonable, if not conclusive, explanation of the rise of the water at the plaintiff's mill, and strongly tends to break the force of the inference which the court was asked to draw from the mere fact that the water had been raised. It does not explain the fact that the water rises only when the defendant's mill is not operated; but this claim rests upon the testimony of witnesses whose credibility was determined by the trial court. The evidence in reference to the time when the water rose and fell is not in itself so conclusive as to justify this court in saying that the finding that the defendant's dam had not been raised is not sustained by the evidence.

3. The newly discovered evidence relates to certain piles which were driven into the stream near the appellant's mill in the spring of 1899 and afterwards cut off above the water line. The existence of these piles was lost sight of until after the case was tried. From experiments and measurements then made it is claimed that it can be shown that the defendant's dam has been raised. The evidence is clearly cumulative, and is not of so conclusive a nature as to require this court to interfere with the discretion which, under the rule

stated in Bunker v. United Order of Foresters, 97 Minn. 361, 107 N: W. 392, is vested in the trial court.

4. Certain evidence was received without objection which the appellant now claims was incompetent, and it is urged that this court, in reviewing the evidence, should disregard this incompetent evidence and the consideration given it by the trial court. The questions which it is claimed drew the incompetent evidence were directed to the witness Case, and called for his opinion as to the effect of the obstruction in the creek at Hoiland's Wash, and whether this obstruction raised the water at the upper dam. The witness was a civil engineer, and had qualified as an expert, and the evidence given by him was competent and pertinent.

The order of the trial court is affirmed.