## THOMAS L. WANN v. NORTHWESTERN TRUST COMPANY and Others.[1]

February 14, 1913.

Nos. 17,909—(240).

**Reversing findings of trial court.**

1. The findings of a trial court are of equal weight with the verdict of a jury, they will not be set aside, unless manifestly and palpably against the weight of the evidence, or if upon any reasonable theory of the evidence they can be sustained, or if under the evidence different persons might arrive at different conclusions.

**Action for fraud.**

2. In order to sustain an action for fraud, it must appear that defendant has made a false representation of a material fact, susceptible of knowledge, knowing it to be false, or as of knowledge where he does not know whether it is true or false, with intent to induce plaintiff to rely upon it, and that plaintiff has relied on it, and is deceived, to his damage.

**Same — statutory action to set aside decree.**

3. In an action, brought under R. L. 1905, § 4277, to vacate a decree for fraud, the representation must be of a substantial character, and must be unequivocal. The statute was not intended to excuse a party from exercising proper diligence in preparing for trial. He must show that he himself was guilty of no negligence.

**Action against trustee — evidence necessary.**

4. Where a beneficiary seeks to charge a trustee with fraud, less evidence is ordinarily required to establish it than where parties are dealing at arm's length. But in this case the beneficiary was a business man familiar with the subject of the trust, the relations between beneficiary and trustee had for a long time been strained, the beneficiary had for some time been making

---

[1] Reported in 139 N. W. 1061.

independent investigation, had expressed entire want of confidence in the trustee, had freely criticised expenditures and failure to make collections by the trustee, had employed an attorney in the very matter of the account determined by the decree, and had finally consented to its allowance on its being corrected as suggested by him. *Held*, the case presents the ordinary one of adversary parties, and the ordinary rules of evidence apply.

**Allowance of trustee's account — subsequent transactions.**

5. A decree allowing an interlocutory account of a trustee does not pass upon items of expenditure which are made after its entry, and upon a claim presented after its entry, when such matters were not in fact referred to in the account, and not in fact litigated, even though the facts out of which the claim arose occurred before entry of the decree. Representations as to such matters are not material in an action to set aside the decree.

**Same — clerical error.**

6. A palpable clerical error in a statement cannot be made the basis of an action for fraud. So *held*, where the statement reports a collection on an account to a date four months after the date of the statement. Nor can fraud be predicated on an erroneous statement that collections have been made on a contract, where from the record the court cannot determine whether any claim in fact exists, nor where, if a claim did exist, it is still a distinct and subsisting obligation of a solvent party.

**Incorrect general allegations in petition for allowance of account.**

7. A general allegation in a petition for allowance of an account of a trustee that it has collected all accounts due the estate, which proves to be incorrect as to small items, is not, as a matter of law, such fraud as will justify the vacation of the degree. The same is true of an affirmative statement of the trustee in answer to a general question. The circumstances are to be considered, and it is *held* that the finding of the trial court that there was no actionable fraud because of such statements in this case should not be set aside on appeal.

**Finding sustained by evidence.**

8. There was evidence that one officer of the trustee represented to appellant that certain collections under a heating contract were not made because no heat was furnished. It appeared on the trial that heat was furnished. Another officer of the trustee testified that it was collected for in full. The court, so found. *Held*, the finding is sustained by the evidence, and there was no actionable misrepresentation.

**Refusal to admit evidence.**

9. The rejection of an offer of evidence, intended to prove fraudulent concealment of the purpose for which an expenditure was made by means of an evasive statement of account, will not on appeal be held reversible error,

where pertinent facts that were before the trial court are not in the record on appeal, especially where the item was reported to the beneficiary more than three years before the entry of the decree, where other items of account arising out of the same contract were the subject of examination, criticism, and negotiation between the parties before the entry of the decree, and where the facts were discovered before the commencement of this action and are not alleged in the complaint.

**Representations as to subsequent transaction.**

10. Representations as to the terms of a renewal lease are not ground for vacation of the decree, where the renewal lease was not consummated until after entry of the decree.

**Effect of allowance of account.**

11. The correctness of items of collection reported in the account filed is settled by the decree allowing it. Appellant offered to prove various small discrepancies in the account. No reason appeared why they could not have been presented on the hearing on the account. *Held* no error.

Action in the district court for Ramsey county against the Northwestern Trust Company and Florence von Schwerin to vacate a judgment entered June 27, 1910, which allowed the accounts of defendant trust company as trustee under the will of John Wann, deceased, to investigate the conduct and management of the trustee, and to surcharge its accounts for the period prior to June 27, 1910, as well as subsequent thereto, with the amount of loss and damage incurred. Defendant trust company, in its separate answer, alleged that its account of receipts and expenditures had been allowed and approved by that court after all the parties interested in the trust, as beneficiaries or otherwise, including plaintiff, had been cited, and that all the parties appeared and submitted themselves to the jurisdiction of the court. Defendant Schwerin in her separate answer prayed that plaintiff take nothing by the action. The case was tried before Dickson, J., who made findings and ordered judgment in favor of defendants. From an order denying plaintiff's motion for a new trial, he appealed. Affirmed.

*M. D. Munn* and *P. L. McLaughlin*, for appellant.

*John D. O'Brien* and *A. E. Horn*, for respondents.

HALLAM, J.

This action is brought by appellant, as one of two beneficiaries under a trust, to set aside, on the ground of fraud, a decree allowing an interlocutory account of the trustee. The other beneficiary, appellant's sister, Florence von Schwerin, refused to join as plaintiff, and she was accordingly made a defendant. She answered, and opposed the demands of plaintiff. The trial court found that no fraud had been committed, and denied the relief asked. The plaintiff appeals.

John Wann was the owner of valuable improved property in the city of St. Paul. There were buildings rented to tenants, and a heating, electric light, and power plant installed for the purpose of supplying heat, light, and power to tenants and others. During his lifetime he placed the care of this property with respondent trust company. Prior to his death he left a will, in which, among other things, he devised to the trust company an undivided two-thirds of said property, with full power of sale and reinvestment, and with directions to hold and manage the same, and to pay the net proceeds thereof, one half to appellant, the other half to his said sister. This will was duly probated, and a final decree assigning said property as aforesaid was entered in the probate court, December 3, 1906.

On February 4, 1910, the trust company presented to the district court of Ramsey county its petition, reciting that it had performed the duties imposed upon it as such trustee, and had rendered to said beneficiaries statements of all receipts and disbursements pertaining to said trust, and had paid over and accounted for all the said net income to said beneficiaries; that a statement of all said receipts and disbursements, being a copy of all the statements rendered to said beneficiaries, was therewith filed in court; and that a statement of the receipts and disbursements pertaining to said trust from date thereof down to the time of the hearing of said petition would be filed at or before the time of said hearing. Petitioner offered its resignation as trustee and asked for a hearing, for examination, allowance, and approval of the accounts, that its resignation as trustee be accepted, and that it be released and discharged from all responsibility

and liability on account of said trusts. A subsequent account was filed, covering the period to June 11, 1910.

On June 27, 1910, the resignation of said trustee having been withdrawn, a decree was entered, upon this petition, "that the accounts herein filed * * * be and the same are, in all things, hereby allowed and approved as stated and filed herein," and that the said trustee continue to perform its duties as such. This decree is conclusive, in the absence of fraud. Kittson v. St. Paul Trust Co. 78 Minn. 325, 81 N. W. 7. Appellant contends that the decree was procured by fraud on the part of the trustee. The alleged fraud consists mainly of the following:

Misrepresentation as to the existence and amount of a claim by the St. Paul Gaslight Company under a contract made by deceased October 14, 1904.

Misrepresentation in regard to collections made from Finch, Young & McConville on account of heat furnished under an old contract, which was renewed December 31, 1906, to continue to May 1, 1907.

Misrepresentation in regard to collections made from French, Finch & Henry for heat furnished upon a contract for the year 1907.

Misrepresentation as to reason for failure to collect rent for six months of a small house at 875 Front street.

Misrepresentation as to the amount of heat furnished to Guiterman Bros. and as to reasons for not making certain collections.

Misrepresentation as to a claim in favor of George T. Simpson in connection with a contract with Foot, Schulze & Co.

Misrepresentations, in statements rendered, as to having made collections of all sums due the estate, which are alleged to have been untrue as to various claims, and concealment of the fact that certain money was paid out for damages due to negligence.

1. The trial court has found against appellant on the issue of fraud. His findings are of equal weight with the verdict of a jury (Tew v. Webster, 103 Minn. 110, 113, 114 N. W. 647; Knoblauch v. Kronschnabel, 18 Minn. 272 [300]) and should not be set aside, un-

120 M.—32.

less manifestly and palpably against the weight of the evidence (Banning v. Edes, 6 Minn. 270 [402]; Dixon v. Merritt, 6 Minn. 98 [160]; Remley v. Travelers' Insurance Co. 108 Minn. 31, 121 N. W. 230), or if upon any reasonable theory of the evidence they can be sustained (Benz v. Geissell, 24 Minn. 169), or if the evidence was of such a character that different persons might from it arrive at different conclusions (Linn v. Rugg, 19 Minn. 145 [181] Eich v. Taylor, 17 Minn. 145 [172]).

2. In order to sustain an action for fraud, it must appear that the defendant has made a false representation of a material fact susceptible of knowledge, knowing it to be false, or has made such representation as of his own knowledge, where he does not know whether it is true or false, with intent to induce the plaintiff to rely upon it, and that plaintiff has relied upon it, is deceived, and is pecuniarily damaged. Riggs v. Thorpe, 67 Minn. 217, 219, 69 N. W. 891. All of these elements must be proven.

3. This action is to set aside a judgment under R. L. 1905, § 4277. The relief asked is of an extraordinary character. Schweinfurter v. Schmahl, 69 Minn. 418, 72 N. W. 702. A decree of a court, once entered, is not to be lightly set aside. It is desirable that matters closed by a decree should be set at rest, and misrepresentations, to warrant the court in vacating a decree, should be of a tangible and substantial character. Fraud cannot be established by inconsequential circumstances, nor by equivocal evidence that is equally consistent with honest intention. Sprague, Warner & Co. v. Kempe, 74 Minn. 465, 77 N. W. 412. Nor was this statute intended to excuse a party from exercising proper diligence in preparing for trial and in advising himself as to facts the evidence of which is at hand. The party bringing such action must show that he was entirely free from contributory negligence. Hass v. Billings, 42 Minn. 63, 43 N. W. 797; Schweinfurter v. Schmahl, supra.

4. It is undoubtedly true that in the ordinary case of trustee and beneficiary, where there is the usual relation of dependence and confidence, the parties do not stand upon equal footing, and less evidence is required to establish fraud than in the case of parties dealing at arm's length. But in this case, in view of the situation of

the parties and their relations for some time prior to the entry of this decree, the litigation is the ordinary one of adversary parties, and the ordinary rules of evidence apply.

Appellant was at this time 48 years old and in the full vigor of active business life. He had been a resident of St. Paul for many years, had been in frequent conference or communication with the trustee during the whole period of this trust, and particularly during the latter portion thereof, had frequently discussed with its officers the management of the trust, had on occasions made investigations of his own as to matters connected with it, and had on numerous occasions criticised freely the administration of the trust. The relations between these parties had for a long time been strained. On May 2, 1911, appellant wrote a letter to the president of the Trust Company. Referring to the vice president and managing officer and the treasurer, the officers with whom he had had his dealings, he said:

"I told you over a year ago that both these men were so disingenuous and unfair, persistently attempting to mislead me, verbally and in writing, that it was a waste of time for me to try to talk to them or get any satisfaction from them."

And he further said of the answer of the president on that occasion:

"You told me that the trust company would proceed along legal lines, making reports to the court at stated intervals, and that I could object to the reports if I saw fit, and that I could in no other way receive any consideration from the officers of the Trust Company."

After the petition was filed, appellant employed competent counsel to protect his interest. The correspondence between them indicates that "several weeks" before March 28, his attorney proposed to the trust company to submit the accounts to two members of the board of directors and one outside person, instead of going into court and try-

ing matters out there. An understanding between them was finally arrived at, by which the trust company was to withdraw its resignation and continue to act as trustee, and the accounts to be presented to the court for approval were to be corrected in accordance with a letter written by appellant to the trust company May 27, a letter not in evidence, and when so corrected to be approved. A decree was entered pursuant to this understanding.

Approaching this case in the light of these well-established rules of law, and viewing it in the light of these significant facts, let us consider the particular charges of fraud.

### REPRESENTATIONS AS TO CLAIMS OF ST. PAUL GASLIGHT COMPANY AND SIMPSON.

5. Appellant relies largely upon certain alleged misrepresentations as to a claim of the St. Paul Gaslight Company, which appellant alleges grew out of negligence of respondent. The trial court found that no such misrepresentations were made. It is unnecessary to consider the correctness of this finding.

It clearly appears that, if any such representations were made, they were wholly immaterial to this case. The decree in question was made June 27, 1910. This claim was not presented by the gas company to the trustee until September, 1910, and was not paid until January 14, 1911. It is true the facts, out of which this claim arose, occurred prior to the entry of the decree. But no reference was made to this claim in the account settled by the decree. It was not litigated, and could not well have been litigated. The decree does not refer to it, either in terms or by inference. It was the view of the trial court that the propriety of this payment was in no manner passed upon by the decree, and in this we concur. It further appears that the trial court made the same ruling when this claim was asserted on a hearing for the allowance of a subsequent account of the trustee, and counsel for the respondent trust company in terms assented to this ruling. Being an immaterial matter, no representations regarding it can in any manner affect this case. The claim that, if appellant had discovered the trustee negligent in this particular, he would have scrutinized the account more closely in others, is not entitled

to great weight, in view of all the circumstances disclosed by the evidence.

For similar reasons, any misrepresentations as to the Simpson claim were immaterial to the issues of this case.

REPRESENTATIONS AS TO FINCH, YOUNG & MCCONVILLE CLAIM.

6. The next item relates to a heating contract with Finch, Young & McConville. During 1906 a contract existed under which the trustee furnished heat to Finch, Young & McConville at "a flat amount to be paid * * * during each year." There was a provision that, if during any year the price of coal should exceed $4 a ton, an amount proportioned to such increase price should be added to this flat amount for that year. This contract expired December 31, 1906. It was extended until April 30, 1907, but upon what terms does not appear.

The trustee made no collection under the differential clause of the old contract above referred to for the renewal period. On October 8, 1907, the trustee rendered a statement showing that it collected on September 1 for difference in average price of coal, "1—1—06 to 12—31—07, $737.50." In fact, it had collected only to "12—31—06." This is the representation relied upon.

In our judgment, appellant cannot predicate fraud upon this statement. The statement, taken literally, reports that the trustee on September 1 made collection based on the price of coal for four months yet to come and during a period when no contract at all existed. Of course, nothing of the sort was intended, and it is not claimed that appellant understood the statement as a representation to that effect. What appellant does contend is that this statement is to be construed as a representation that collection was made for difference in average price of coal up to April 30, 1907, the date of expiration of the extended term. This is not the language of the statement, and it cannot be so construed. The fact is the date "12—31—07" is a palpable mistake. It is reasonable to believe that it was written by clerical error for "12—31—06," the date to which collection was in fact made. The statement would commonly be so un-

derstood. At any rate, it was not such a representation as appellant claims for it.

Nor does it appear that there was any damage done if the statement was false. The trustee claims that it had no right to make any collection on this account after "12—31—06." We cannot say that this claim is incorrect. As above stated, the terms of the renewal contract do not appear. Some agreement must have been made as to the price to be paid for the four months of 1907, either by apportionment of the annual "flat amount" or otherwise. It does not appear what such agreement was. A portion only of this old contract appears in the record. This portion of the contract suggests no method of arriving at the amount to be paid for an extension for four winter months. It is impossible to determine from this record what the rights of the parties for this period in fact were.

It further appears that Finch, Young & McConville has at all times been a going and solvent concern. If this concern owed anything to the trustee on this renewal contract, it still owes it, and it has not been discharged by any statement made by the trustee. An interlocutory decree approving a trustee's account of collections and disbursements does not discharge creditors from payment of accounts due to the trust estate. Nor does it determine that the trustee is absolved from collecting a distinct and independent claim, such as this is alleged to be. If it had appeared on the hearing of the trustee's account that a distinct item of this sort had been overlooked, the trustee's account would not have been surcharged with the amount, unless it had disabled itself from collecting it by release or otherwise, or had refused to do so. Nothing of that sort appears here.

REPRESENTATIONS AS TO FRENCH, FINCH & HENRY CLAIM.

7. The next item relates to a claim of $200 due from French, Finch & Henry. It appears that, under a contract similar to that with Finch, Young & McConville, $200 was due the trustee from French, Finch & Henry for the year 1907. Appellant's interest in this was $66.66. This firm went into liquidation in 1908. No reason appears why this amount was not collected in full, except that the secretary of the trust company testified that he was told by other

officers of the company that this item was included with other claims in a compromise of demands due from French, Finch & Henry. This information appears to have been incorrect. But the only representation claimed as to the matter is an allegation in the petition that the trustee had collected all accounts due the estate, which it is claimed was not true. There was also an offer to prove that appellant inquired of the trust company if there were any outstanding accounts uncollected for either rent, heat, light, or power, and was informed by them that there was not, excepting some small items not here material.

A general allegation in a petition for an allowance of an account that the trustee has collected all accounts due the estate is not, as a matter of law, such a representation as will entitle a beneficiary to vacate the decree allowing the account. If this were the law, then every such decree could be vacated where a trustee in general terms asserts the verity of his accounts, and where inaccuracy afterwards appears. Such a rule would render such decrees of little value.

Likewise a statement in answer to a general question that all accounts have been collected does not justify the vacation of the decree, simply because it later develops that there is outstanding a small claim more than three years old against a defunct concern, which the officers of the trustee believed was included in a compromise.

Furthermore, the French, Finch & Henry lease and contract had during this same period been the subject of much controversy between the appellant and the trustee. Appellant had complained that the trustee had failed to collect all that was due under the lease, and certain claims under the lease were placed with appellant's own attorney for collection. There were disputes over repairs made for these parties, and it is claimed by appellant that the proposal of arbitration above referred to was prompted by some difference as to expenditures in connection with this very contract. Under all the circumstances, it seems clear that appellant might by the exercise of reasonable diligence have fully informed himself as to these facts before the entry of the decree. The finding of the court that there was here no actionable fraud must be sustained.

REPRESENTATIONS AS TO RENT FOR 875 FRONT STREET.

The next charge relates to a failure to collect rent amounting to $72 for premises known as "875 Front Street." Appellant's interest in this was $24. No sufficient reason appears why this rent was not collected, and it does appear that at one time the treasurer of the trust company advised appellant that the reason this rent was not collected was that the premises were vacant during the period in question. It is now admitted that this statement was not true; but the trustee contends that it was made in good faith and on information from the cashier in the office, and the court so found. There was also testimony that appellant learned all the facts as to this matter before the entry of the decree. The court found this to be the fact. There is evidence sufficient to sustain the findings of the court.

REPRESENTATIONS AS TO ACCOUNTS OF GUITERMAN BROS.

8. The next charge relates to representations in connection with a contract to furnish heat to Guiterman Bros. It is claimed that the trustee furnished heat for a room in the third floor of No. 350 Sibley street, and the second, third, and fourth floors of 346–348 Sibley street, for which no collection was made. As to No. 350, no representations were made. The contract provided for heating the second floor, but such heat was not required. There was evidence that for this reason no charge was made for the third-floor room. The court so found. As to 346–348, there is evidence on the part of appellant that the heat was furnished and not paid for, and that the treasurer of the trust company represented to appellant that no heat was furnished. This representation, if made, was not true. The secretary of the company, however, testified that the steam furnished for these floors was paid for, that the bills therefor were included in the meter readings, and the same were collected in full. If this was the fact, there was no misrepresentation. The court so found, and there is evidence to sustain the finding.

9. Appellant offered to show that in December, 1906, or January, 1907, respondent negligently permitted certain steam pipes to freeze, causing a damage to one of the tenants, Guiterman Bros.

which resulted in the Northwestern Trust Company paying over $1,000 in settlement for such damage; that this disbursement was reported in the monthly statement made to appellant and filed in court under the head of repairs and improvements to the Guiterman Building; and that plaintiff did not know such payment covered damages until the fall of 1911. This offer was rejected. This is assigned as error.

The gist of the offer is that respondent fraudulently reported an expenditure for damages due to neglect under the head of "repairs" and "improvements." We are not disposed to countenance the report of expenditures by a trustee under evasive or deceptive titles, but upon the whole record we cannot say that the evidence offered would sustain a finding of fraudulent representations.

The language of this report of the trustee which constitutes the alleged representation, though part of the record in the trial court, is not in the return to this court, and it is not contained in the paper book or any of the briefs. We cannot hold the rejection of an offer of evidence to be error when pertinent facts that were before the trial court are not in the record on appeal. It is self-evident that this freeze-up did not entail "repair." Whether the amount thereof was included in the item, together with the "damage" to the tenant, does not appear.

This large payment had been made, and this conspicuous item had been reported to appellant, more than three years before the decree was made. During this period almost every phase of the Guiterman leases and contracts had been the subject of repeated conference, correspondence, and criticism. In one letter inquiry is made as to a small bill of $49 for plate glass. We cite this instance simply to show the attention appellant was giving to even the small items of this account.

Matters pertaining to Guiterman Bros. leases and contracts form a large part of the allegations of the complaint. The offer of proof indicates that appellant learned the facts as to this payment in the fall of 1911. The complaint in this action was verified January 30, 1912, yet this large item is not mentioned in the complaint, while

an item of $80 and another of $72 are made the subject of extended allegations.

Under all the circumstances of the case, we cannot hold the exclusion of this evidence reversible error.

10. There is a charge of misrepresentation as to the term of a renewal lease with Guiterman Bros.; but this lease was not consummated until after the decree, and the conduct of the trustee in connection with it is not affected by the decree.

11. There are numerous charges that incorrect amounts were collected from various parties for light, heat, and power. The trial court found that there was no fraud in connection with any of the items as to which evidence was received. In no case is it claimed that the amount in fact collected was incorrectly reported. The charge is that the statement in the petition and the general representation that all accounts had been collected, taken in connection with these alleged delinquencies, constituted actionable fraud. For reasons heretofore stated, we hold that such representations do not constitute actionable fraud, and the finding of the trial court is sustained.

There were also offers to prove other various discrepancies of a similar character. The court was right in refusing to permit an inquiry into the details of these transactions for the purpose of showing that the items collected were of incorrect amounts. Of course, the decree is conclusive as to the correctness of these items, unless vacated; but no specific misrepresentations were charged in connection with them, and no reason appeared why the objections to them could not have been presented on the hearing of the trustee's account.

There are charges of misrepresentations as to the general result of the management of the steam plant by the trustee. These alleged statements are so general, and so largely matters of opinion and belief, deduced from accounts that were furnished to appellant, that they cannot form a basis for relief on the ground of fraud.

Order affirmed.